ABRAITIS, APPELLANT, *v.* TESTA, TAX COMMR., APPELLEE.

[Cite as *Abraitis v. Testa,* 137 Ohio St.3d 285, 2013-Ohio-4725.]

*Taxation—Taxpayer's reassessment petitions should have been dismissed by tax commissioner because taxpayer failed to prepay the assessment as required by R.C. 5747.13(E)(3).*

(No. 2012-1509—Submitted July 9, 2013—Decided October 29, 2013.)

APPEAL from the Board of Tax Appeals, Nos. 2011-A-3870 and 2011-A-3974.

_____

**Per Curiam.**

{¶ 1} In this personal-income-tax case, Sarunas Abraitis appeals from a decision of the Board of Tax Appeals ("BTA") that dismissed his appeal for lack of jurisdiction. The BTA found that Abraitis had asserted "no discernible specifications of error * * * within the petitions for reassessment" and held that "Abraitis cannot now raise new/different issues at this juncture" because " 'the failure to raise an issue in a petition for reassessment precludes the BTA from taking jurisdiction over the issue—even if the issue was raised in the notice of appeal to the BTA.' " *Abraitis v. Testa*, BTA Nos. 2011-A-3870 and 2011-A-3974, 2012 WL 3644696, *2 (Aug. 14, 2012), quoting *Am. Fiber Sys., Inc. v. Levin*, 125 Ohio St.3d 374, 2010-Ohio-1468, 928 N.E.2d 695, ¶ 15. In arriving at its conclusion, the BTA rejected another jurisdictional argument advanced by the tax commissioner: the objection that because Abraitis had not paid the assessment, the tax commissioner himself had lacked jurisdiction to hear Abraitis's reassessment petitions pursuant to R.C. 5747.13(E)(3). *Id.* at *1. The BTA reasoned that the prepayment provision was triggered by a failure to file tax returns, and it inferred from the wording of the tax commissioner's final determination that Abraitis had in fact filed returns for the tax years at issue. *Id.*

{¶ 2} Abraitis has appealed, and on appeal, both parties are agreed that Abraitis did *not* file returns for the tax years at issue. That assertion is consistent with the record. We therefore reverse the BTA's ruling that the prepayment requirement does not apply, vacate the remainder of the BTA's decision, and remand the cause to the tax commissioner with instructions that the reassessment petitions be dismissed for lack of prepayment pursuant to R.C. 5747.13(E)(3).

**Facts**

{¶ 3} This an appeal from a BTA decision that disposed of five income-tax assessments issued by appellee, the tax commissioner, against appellant, Sarunas Abraitis, for the tax years 2003, 2004, 2005, 2006, and 2007. The tax commissioner asserts that he issued the assessments based on information from the Internal Revenue Service ("IRS").

{¶ 4} In these proceedings, Abraitis has advanced specious (and often incomprehensible) arguments to oppose the tax assessments levied against him. Most prominently, Abraitis's reassessment petitions rely upon the contention that he is "not an alien, foreign corporation, officer, director, stockholder or employee of a foreign corporation, withholding agent or taxpayer, nor a citizen of the United States living and working abroad or in a possession of the United States." From that assertion, Abraitis draws the unwarranted conclusion that he "is not subject to the jurisdiction of the United States." Of course, it is Ohio's authority to tax, not that of the federal government, that is relevant here, and Abraitis notably made no mention of his status as an Ohio resident, which it appears he was at all relevant times.

{¶ 5} Before the BTA and before this court, however, Abraitis does advance the serious argument that some or all of the income that forms the basis for the assessment is actually the income of a person other than Abraitis. He suggests that the taxing authorities may have confused him with another person because of a mix-up of Social Security numbers. The question before us,

however, is whether Abraitis properly invoked and preserved jurisdiction to permit his contentions to be considered.

### 1. Content of the assessments

**{¶ 6}** The transcript certified by the tax commissioner contains copies of the five assessments issued to Abraitis, all dated February 1, 2011. The assessments are labeled "notice of assessment/individual income tax," and there is one for each of the tax years at issue. Each sets forth a tax-due amount, an amount of preassessment interest (i.e., the interest accrued between the time payment was due and the time the assessment was issued), a penalty amount for late filing, and a penalty amount for late payment. Adding those numbers, the total due for all five tax years was $8,156.98.

**{¶ 7}** The notices do not explain the basis for the assessments. But when he presented oral argument to the master commissioner, the tax commissioner's counsel explained that the tax department "received information from the federal government showing federal adjusted gross incomes for that year [sic, those years]," and that reported information formed the basis for the assessments.

### 2. Abraitis's petitions for reassessment

**{¶ 8}** In February 2011, Abraitis filed documents that the tax commissioner treated as reassessment petitions. Each petition is accompanied by a letter that recites that Abraitis is "not an alien, foreign corporation, officer, director, stockholder or employee of a foreign corporation, withholding agent or taxpayer, nor a citizen of the United States living and working abroad or in a possession of the United States." Each petition also contains an affidavit notarized on February 4, 2011. The affidavit in each case is entitled "Verification of Drawer's Issue of Currency and Agreement" and sets forth the respective assessment number and, among other averments, proclaims that Abraitis is "a man and not a Corporation or agent," characterizes the assessed amounts as "presentments," declares the "presentment" to be "an issue of currency security,"

and sets forth steps supposedly to be taken by the tax department as a response in support of the "presentments." His filings fit into the "tax protester" category, a category long recognized by the federal courts. Tax-protester filings are typically composed of " 'a hodgepodge of unsupported assertions, irrelevant platitudes, and legalistic gibberish.' " *Dunham v. Commr. of Internal Revenue*, T.C. Memo. 2003-260, 2003 WL 22073043, *1, 3 (Sept. 8, 2003), quoting *Crain v. Commr. of Internal Revenue*, 737 F.2d 1417, 1418 (5th Cir.1984).

### 3. Denial of the petitions by final determination

{¶ 9} On July 19, 2011, the tax commissioner issued a single final determination denying all five petitions. The final determination recites that Abraitis was "assessed after corrections were made to his 2003, 2004, 2005, 2006, and 2007 individual income tax returns." The determination notes that Abraitis "objects to the assessments as issued" but concludes that he "failed to refute the accuracy of the tax and interest amounts assessed" and that "Department records reflect that the tax and interest amounts assessed in this matter are accurate." The determination makes no mention of any jurisdictional bar to consideration of the petitions for reassessment; instead, it purports to rule on the merits of the petitions, and in doing so, implies that Abraitis filed returns, which he did not.

### 4. Nominal but not full payment

{¶ 10} By money order on or about November 10, 2011, Abraitis made a payment of $1 toward each assessment. Those payments were in response to an October 29, 2011 letter from the tax department noting that the $8,156.98 was still unpaid and that he owed additional postassessment interest of $256.55 as of November 14, 2011. Thus, Abraitis has apparently paid $5 toward the more than $8,400 owed.

### 5. The BTA appeal

{¶ 11} Abraitis's appeal to the BTA took the form of three filings, the first two of which the BTA treated as separate notices of appeal. The first set of

papers was apparently filed by Abraitis himself on November 7, 2011; the second and third were filed by his counsel on November 15 and December 21, 2011. The first two were separately docketed and initially assigned separate case numbers, but the cases were later consolidated. The later notices, filed by counsel, advance a theory that the income that the federal government had attributed to Abraitis was actually income of a relative whose Social Security number was similar to Abraitis's.

{¶ 12} The proceedings at the BTA included a motion for default judgment by Abraitis and belated filing of the transcript by the tax commissioner.

{¶ 13} On May 21, 2012, the tax commissioner filed a motion to dismiss the BTA appeal, asserting two grounds: first, that Abraitis had failed to prepay the assessment, a requirement imposed by R.C. 5747.13(E)(3)—with the result that the tax commissioner lacked jurisdiction to consider the petitions for reassessment and, thus, the BTA and this court lack jurisdiction over the appeals; and second, that the objections Abraitis raised in the petitions do not include or encompass the specifications of error in the notices of appeal—with the result that the BTA lacked jurisdiction to consider the error specified to it.

{¶ 14} The BTA rejected the tax commissioner's first ground for dismissal, finding that the final determination indicated that Abraitis had filed returns when it stated that "corrections were made to [Abraitis's] 2003, 2004, 2005, 2006, and 2007 individual income tax returns." *Abraitis v. Testa*, 2012 WL 3644696, *1. Because R.C. 5747.13(E)(3) applies when no returns have been filed, the BTA found that the statute's prepayment requirement did not apply here.

{¶ 15} On the second ground for dismissal, however, the BTA agreed with the tax commissioner that it lacked jurisdiction to address the errors specified in the notices of appeal because those errors had not been specifically raised before the tax commissioner. The BTA therefore dismissed the appeal, and Abraitis has appealed.

*6. Parallel federal proceedings*

**{¶ 16}** Abraitis states that he is "presently contesting the underlying income tax liability for tax periods 2003 and 2007 before the United States Tax Court in *Abraitis v. Commr.*, United States Tax Court No. 4985-12 L, filed February 23, 2012, which determination will ultimately impact the adjusted gross income * * * of tax periods 2004, 2005, and 2006." When she presented oral argument to the master commissioner, Abraitis's counsel mentioned a related Sixth Circuit court case as well as a tax court case. Also at oral argument, the tax commissioner's counsel stated that if adjustments were made at the federal level to the income at issue here, the tax department "would adjust [its] assessments based on if the feds made changes to their assessments." Fulfilling that commitment lies within the commissioner's authority to correct assessments pursuant to R.C. 5703.05(H), and it appears that that authority continues even if the petitions for reassessment in this case are dismissed for lack of jurisdiction.

**Analysis**

**{¶ 17}** In reviewing BTA decisions, we look to see if they are reasonable and lawful. *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14. Because the BTA is responsible for determining factual issues, we will affirm the BTA's findings if they are supported by reliable and probative evidence. *Id*. But the jurisdictional issues presented in this case raise questions of law, which we review de novo. *Toledo v. Levin*, 117 Ohio St.3d 373, 2008-Ohio-1119, 884 N.E.2d 31, ¶ 26, fn. 3; *Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035, 942 N.E.2d 1054, ¶ 10.

*1. Abraitis's propositions of law are moot*

**{¶ 18}** In the present case, Abraitis seeks relief from the BTA's jurisdictional ruling based on three propositions of law. First, Abraitis asserts that "[a] general averment of fraud is adequate in a personal income tax case where the Appellant has not filed tax returns for the years at issue." Second, Abraitis

claims that the BTA decision "undermines state law and cedes a state right to the federal government." Third, Abraitis argues that the BTA is bound by Gov.Bar R. VII, which relates to the unauthorized practice of law.

{¶ 19} To the extent that these propositions identify alleged errors below, they address substantive or jurisdictional considerations that are moot if we determine that the tax commissioner never acquired jurisdiction over the reassessment petitions. Because we hold that the prepayment requirement barred those petitions, we also hold that the propositions of law are moot. We therefore decline to address them.

*2. R.C. 5747.13(E)(3) required Abraitis to prepay in order to obtain a hearing of his reassessment petitions, and the failure to prepay bars jurisdiction*

a. This court exercises plenary authority to determine the jurisdiction of the tax tribunals

{¶ 20} In its decision, the BTA issued rulings on two jurisdictional issues: whether Abraitis was obliged to prepay the assessment to obtain a hearing on his petitions for reassessment and whether Abraitis had properly raised as objections before the commissioner the errors he later specified to the BTA. Because Abraitis was aggrieved by the BTA's latter ruling and not by the former, his appeal challenges the latter and remains silent on the former. For his part, the commissioner responds to Abraitis's appeal by asserting that the BTA's dispositive ruling was correct; beyond that, the commissioner takes the position that the prepayment issue is not before the court.

{¶ 21} The commissioner is mistaken. To be sure, with regard to substantive issues presented in tax appeals, we must refrain from ruling on issues that have not been properly preserved or presented. *See Newman v. Levin*, 120 Ohio St.3d 127, 2008-Ohio-5202, 896 N.E.2d 995, ¶ 27, 28 (court was jurisdictionally barred from hearing two issues, one that was not specified in the notice of appeal to the BTA and one that was not specified in the notice of appeal

to the court); *E. Liverpool v. Columbiana Cty. Budget Comm.*, 116 Ohio St.3d 1201, 2007-Ohio-5505, 876 N.E.2d 575, ¶ 3 (argument not raised in the party's brief is deemed to be abandoned).

{¶ 22} Issues that relate to the jurisdiction of the administrative tribunals are, however, another matter. Because this court's jurisdiction over a tax case derives from the jurisdiction of the tax authorities from which the appeal has been taken, we have held that we may consider issues that concern the jurisdiction of those tribunals even if they were not raised in the notice of appeal. *See Crown Communication, Inc. v. Testa,* 136 Ohio St.3d 209, 2013-Ohio-3126, 992 N.E.2d 1135, ¶ 27, and cases cited therein.

{¶ 23} Here, the prepayment issue was presented to the BTA through the commissioner's motion to dismiss and was ruled on by the BTA. Moreover, R.C. 5747.13(E)(3) sets forth a requirement that qualifies as a jurisdictional prerequisite: it is a statutory condition for filing a reassessment petition, and it reflects the " 'exceedingly' strong interest in financial stability and fiscal planning" on the part of the state. *Pengov v. Ohio Dept. of Taxation*, 10th Dist. Franklin No. 06AP-60, 2006-Ohio-3711, ¶ 14 (upholding a prepayment provision of former R.C. 5747.13(E) against a due-process challenge), quoting *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Dept. of Business Regulation of Florida*, 496 U.S. 18, 37, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990). We have regarded such requirements as jurisdictional in the past, and we do so here as well. *See W.T. Grant Co. v. Lindley*, 50 Ohio St.2d 7, 361 N.E.2d 454 (1977) (affirming the dismissal of reassessment petitions for lack of jurisdiction based on the taxpayer's failure to prepay as required by statute), citing *Pre-Fab Transit Co. v. Bowers*, 176 Ohio St. 163, 198 N.E.2d 461 (1964), and *Niemeyer v. Collins*, 45 Ohio St.2d 63, 341 N.E.2d 847 (1976).

{¶ 24} Therefore, although neither party appealed the BTA's ruling on the prepayment issue, we will address that issue. It is particularly appropriate to do

so because prepayment is a threshold the taxpayer must pass over in order to obtain any consideration of his petitions on the merits.

    b.  R.C. 5747.13(E)(3) required Abraitis to prepay the assessment, penalties, and interest to obtain a hearing on his reassessment petitions

{¶ 25} Ohio law ordinarily affords a taxpayer who has been subject to an assessment of unpaid income tax the opportunity to contest the assessment before making payment.  To do so, the taxpayer files a petition for reassessment pursuant to R.C. 5747.13(B) within 60 days after service of the notice of assessment.

{¶ 26} However, the statute does require prepayment in three circumstances, which are set forth in R.C. 5747.13(E).  The first two conditions that call for prepayment relate to tax returns filed by the taxpayer.  The third, R.C. 5747.13(E)(3), pertains to the situation in which no returns have been filed:  the failure to file returns triggers the requirement to prepay the tax, penalties, and interest in order to have the reassessment petition considered.

{¶ 27} There are two exceptions to the requirement that the assessment be prepaid when no return has been filed.  The first exception applies when the taxpayer claims a lack of nexus with Ohio for tax purposes.  The second applies when the taxpayer offers to show that a proper computation of his taxes would lead to a de minimis liability:  specifically, prepayment is not necessary when "[t]he computations required under division (A) of section 5747.01 of the Revised Code or the application of credits allowed under this chapter has the result that the person's tax liability is less than one dollar and one cent."

{¶ 28} Oddly, the tax commissioner's final determination makes no mention of R.C. 5747.13(E)(3) and appears to decide Abraitis's petitions on the merits.  At the BTA, however, the tax commissioner did argue that Abraitis's failure to file returns meant that he was required to prepay in full to invoke the tax commissioner's jurisdiction over the petitions for reassessment.  The BTA

rejected this contention because it concluded that Abraitis had filed returns for the years at issue.

{¶ 29} At the outset, then, we must determine whether Abraitis filed returns. He did not. To be sure, the commissioner's final determination implies that returns were filed by stating that "corrections were made to his 2003, 2004, 2005, 2006, and 2007 individual income tax returns," thereby inviting the BTA's inference that Abraitis had originally filed returns that had contained errors that the tax commissioner undertook to correct. But the tax commissioner stated in his motion to dismiss filed at the BTA that "Mr. Abraitis never filed the income tax returns for the years at issue."[1] In response, Abraitis did not contest this assertion; to the contrary, Abraitis stated, "[T]here is no evidence that [Abraitis] filed any tax returns for these years." In his reply brief to this court, Abraitis characterized the present case as one in which "the taxpayer has not filed a return." And at oral argument, both parties firmly committed to the position that no returns had been filed. Additionally, the fact that the tax commissioner assessed the statutory maximum amount of penalty for late filing supports the conclusion that no returns were filed.

{¶ 30} We conclude that Abraitis did not file returns for the years at issue.[2] As we recently held in a similar context, the taxpayer, as the claimant in these proceedings, has the burden, when challenged, to establish the factual basis

---

1. At oral argument before the master commissioner, the tax commissioner's counsel explained the final determination's use of the phrase "corrections were made to * * * individual income tax returns": "What it means is, no return was filed; we received information from the federal government showing federal adjusted gross incomes for that year [sic, those years] and corrections were made."

2. Ordinarily it is the BTA's function as the finder of fact to determine the basic facts relevant to both jurisdictional and substantive issues. However, the tendency of particular evidence to prove a particular fact presents an issue of law that we resolve on a de novo basis, *see Moore Personnel Servs., Inc. v. Zaino*, 98 Ohio St.3d 337, 2003-Ohio-1089, 784 N.E.2d 1178, ¶ 7, and in this context the BTA's interpretation of the significance of the wording in the final determination has been refuted.

for the exercise of jurisdiction to consider its claim. *Marysville Exempted Village School Dist. Bd. of Edn. v. Union Cty. Bd. of Revision*, 136 Ohio St.3d 146, 2013-Ohio-3077, 991 N.E.2d 1134, ¶ 10-13. In *Marysville*, as in this case, we confronted a record that presented little evidence on which to resolve the jurisdictional issue presented. *Id*. at ¶ 9. Nonetheless, we held that the taxpayer's admissions permitted the issue to be confronted and resolved. We adopt the same approach here.

{¶ 31} Turning back to the application of R.C. 5747.13(E)(3), we conclude that Abraitis, as a nonfiler, was required to prepay the assessment to obtain a hearing of his petitions for reassessment, unless he showed that his situation fell within one of the exceptions to the rule.

c. Abraitis has not invoked the exceptions to prepayment

{¶ 32} R.C. 5747.13(E)(3) sets forth two circumstances under which a taxpayer who has not filed a tax return does not have to prepay an assessment in order to file a petition for reassessment: (1) if the taxpayer establishes that "the basis for [the] failure" to file the return is an assertion that he "has no nexus with this state" or (2) "the basis for [the] failure" to file the return is that "[t]he computations required under [the income-tax law] or the application of credits allowed * * * has the result that [his] tax liability is less than one dollar and one cent." R.C. 5747.13(E)(3)(a) and (b). As the claimant who filed the petitions for reassessment, Abraitis must shoulder the burden of demonstrating that he comes within the exceptions to the general prepayment rule. He has not discharged that burden.

{¶ 33} First, Abraitis has advanced no argument that he lacks an income-tax nexus with Ohio. Under R.C. 5747.02, Ohio income tax is "levied on every individual * * * residing in or earning or receiving income in this state." Abraitis has apparently lived in Euclid, Ohio, at all relevant times and, in any event, has never contended that he did not reside in Ohio during the tax years at issue.

Although Abraitis contends that the income that forms the basis for the assessments against him cannot properly be regarded as his income, that is a contention on the merits of the assessment that does not address Abraitis's nexus with the state.

{¶ 34} Second, Abraitis has never offered to show that his failure to file was justified on the grounds that his actual Ohio adjusted gross income, when subjected to proper treatment under Ohio's income-tax law, would have led to a tax liability of less than $1.01.

{¶ 35} It is true that before the BTA, Abraitis argued that the particular income attributed to him by the tax commissioner's assessment is not his income but someone else's. But the exception cannot be applied in this case, because Abraitis has never presented an argument why, consistent with R.C. 5747.13(E)(3)(b), "[t]he computations required" under the income-tax law or the "application of credits allowed" by the law would have the "result that [Abraitis's] tax liability is less than one dollar and one cent" for the tax years at issue. His reassessment petition advanced nothing but tax-protester contentions that were devoid of merit. Neither before the tax commissioner nor on appeal at the BTA did Abraitis offer to show what his Ohio tax liability was for the tax years at issue, given the nature and sources of his income.

{¶ 36} We recognize that R.C. 5747.13(E)(3) places a burden of recordkeeping on an Ohio resident taxpayer who decides not to file an Ohio tax return: when an assessment is issued against him, he can avoid prepayment only if he can prove that he was justified in not filing a return in accordance with R.C. 5747.13(E)(3)(b). But the requirement is not unduly onerous. The prepayment provision generally parallels R.C. 5747.08, which requires a taxpayer to file a return unless "the total credits allowed" equal or exceed the tax liability duly computed under the income-tax code. Generally speaking, a taxpayer with tax nexus in Ohio is in one of two situations: either he files a return or he does not,

and if he does file, the state is limited to a four-year period in which to issue assessments pursuant to R.C. 5747.13(A). If he does not file, the state is limited to the general ten-year limitation period pursuant to R.C. 5703.58(A), and during that period, the taxpayer must be prepared to justify his failure to file.

{¶ 37} R.C. 5747.13(E)(3) is designed to prevent tax protesters who refuse to file returns from postponing the payment of their liabilities by advancing baseless contentions, and we conclude that the statute applies in this case. It follows that Abraitis's petitions should have been dismissed by the tax commissioner for failure to prepay in full.

### 3. The issue of Abraitis's failing to raise objections
### before the tax commissioner is moot

{¶ 38} Because we have disposed of this matter on the prepayment issue, we need not address the merits of the BTA's ruling on the question whether Abraitis's failure to raise objections in the reassessment petitions barred his raising those issues at the BTA. In making its ruling on this issue, the BTA applied *CNG Dev. Co. v. Limbach*, 63 Ohio St.3d 28, 32, 584 N.E.2d 1180 (1992), a case addressing sales- and use-tax assessments, along with *Am. Fiber Sys. v. Levin*, 125 Ohio St.3d 374, 2010-Ohio-1468, 928 N.E.2d 695, a case addressing public-utility personal-property-tax assessments. We have not, however, applied the *CNG* or *Am. Fiber* holding to income-tax assessments before, and we decline the invitation to do so in a context in which the prepayment issue furnishes a ground that fully disposes of the case.

### 4. Two additional jurisdictional objections have not been substantiated

{¶ 39} In addition to the prepayment issue and the failure-to-object issue, the parties have suggested two other issues that might affect jurisdiction over the subject matter.

{¶ 40} Abraitis asserts that the tax commissioner failed to serve him with the final determination by certified mail, as required by R.C. 5703.37. For his

13

part, the tax commissioner suggested in a footnote in his brief, without actually asserting the point, that Abraitis may not have timely appealed to the BTA.

**{¶ 41}** As to the certified-mail point: Although Abraitis did mention before the BTA that the tax department did not receive the return receipt from a putative certified mailing, Abraitis did not argue that the final determination should be regarded as invalid on the grounds that the certified mailing never occurred. The case law establishes that a method-of-service objection belongs to a very limited category of jurisdictional issues that can be waived when not raised before the BTA; it has apparently been waived here. *See Colonial Village, Ltd. v. Washington Cty. Bd. of Revision*, 114 Ohio St.3d 493, 2007-Ohio-4641, 873 N.E.2d 298, ¶ 14.

**{¶ 42}** As for the timely filing issue: Abraitis had the obligation to file his appeal to the BTA "within sixty days after service of the notice of the * * * determination * * * has been given." R.C. 5717.02(B). The timeliness of Abraitis's BTA appeal cannot be determined without establishing the date Abraitis was served, and the tax commissioner's failure to fully assert the flaw and prove the time of service leads us to disregard the timeliness issue. *See Wycuff v. Fotomat Corp.*, 38 Ohio St.2d 196, 197, 311 N.E.2d 657 (1974) (when the issue of the timeliness of appeal has been raised, the "burden of showing when the rehearing decision of the administrator was mailed [is] on the public agency"); *Proctor v. Giles*, 61 Ohio St.2d 211, 213, 400 N.E.2d 393 (1980) (articulating the same principle in a different context). We also reiterate our admonition that litigants should regard themselves as under an affirmative duty when "a significant jurisdictional issue is raised" to "state the facts, as they believe them, and to present evidence in support of their material allegations." *Colonial Village* at ¶ 6.[3]

---

3. In her brief, Abraitis's counsel refers to her client's mental illness, to which she attributes some of his incomprehensible filings. Later, the brief faults the tax department for having "little regard

**Conclusion**

**{¶ 43}** For the foregoing reasons, Abraitis's reassessment petitions should have been dismissed for failure to prepay pursuant to R.C. 5747.13(E)(3). The BTA's contrary ruling is hereby reversed, and the remainder of the BTA's decision is vacated. The cause is remanded to the tax commissioner with instructions that the petitions be dismissed for lack of jurisdiction.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Catherine M. Brady, for appellant.

Michael DeWine, Attorney General, and Daniel W. Fausey and Melissa W. Baldwin, Assistant Attorneys General, for appellee.

_____

---

for whether a taxpayer is either elderly or a disabled adult, or both" and, in passing, refers to the Americans with Disabilities Act. But Abraitis makes no formal argument that an impaired state of mind excuses him from the statutory requirement at issue in this case. As a result, that argument has been waived. *E. Liverpool*, 116 Ohio St.3d 1201, 2007-Ohio-5505, 876 N.E.2d 575, ¶ 3; *accord Util. Serv. Partners, Inc. v. Pub. Util. Comm.*, 124 Ohio St.3d 284, 2009-Ohio-6764, 921 N.E.2d 1038, ¶ 53 (asserted defect effectively waived when the appellant failed to state in argument form "whether the relevant case law, applied to the facts of this case, justifies a decision in [the appellant's] favor").