[Cite as *In re Estate of Abraitis*, 2017-Ohio-5577.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104816**

# IN RE: ESTATE OF VLADA SOFIA STANCIKAITE ABRAITIS

[Appeal by Attorney Catherine M. Brady]

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2011 EST 172533

**BEFORE:** Stewart, J., Kilbane, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 29, 2017

**ATTORNEYS FOR APPELLANT**

**For Catherine M. Brady**

Catherine M. Brady
4417 West 189th Street
Cleveland, OH 44135


**ATTORNEYS FOR APPELLEES**

**For Adam M.   Fried**

Adam M. Fried
Martin T. Galvin
Paul R. Shugar
David J. Walters
Reminger Co., L.P.A.
1400 Midland Building
101 Prospect Avenue, West
Cleveland, OH 44115

**For Vivian Abraitis-Newcomer**

Randall M. Perla
19443 Lorain Road
Fairview Park, OH 44126


**Also Listed**

Egidijus K. Marcinkevicius
A. Sirviaitis & Associates
880 East 185th Street
Cleveland, OH 44119

MELODY J. STEWART, J.:

{¶1} After finding that appellant-attorney Catherine M. Brady engaged in frivolous conduct with respect to the administration of an estate, the probate court ordered her to pay attorney fees and expenses to appellee Adam Fried, the successor fiduciary to the estate of Vlada Sofija Stancikaite Abraitis.[1]  The nine assignments of error on appeal collectively challenge whether the court properly determined that sanctions were warranted and whether the amount of sanctions was reasonable.

{¶2} This case has a long history that belies the simplicity of the facts.  In 2004, Abraitis was named guardian for his mother, Vlada, but was later removed.  Vlada died in 2008.  No will was offered into probate at that time.

{¶3} In June 2011, the Internal Revenue Service issued Abraitis a final notice of intent to levy on assets he held in an investment account under his own name and social security number in order to satisfy his tax obligations for prior  years.  Abraitis claimed that the proceeds of the investment account had been deposited into the account by his

---

[1] The court also found that Brady's client, Sarunas Abraitis, engaged in frivolous conduct, and imposed sanctions jointly and severally against him.  Abraitis filed a separate appeal, 8th Dist. Cuyahoga No. 104822, and that appeal was consolidated with this one.  Sarunas died in January 2017.  Brady gave notice that she had been appointed executor of Sarunas's estate and we substituted her as the party appellant in appeal No. 104822.  We then received notice that Brady had been removed as the executor of Sarunas's estate and replaced by Egidijus Marcinkevicius, whom we substituted as a party on behalf of Sarunas's estate.  Marcinkevicius filed a notice of voluntarily dismissal of appeal No. 104822.  The notice of dismissal did not state that it had been joined by the estate of Vlada Sofia Stancikaite Abraitis, so we treat it as a motion to dismiss the appeal under App.R. 28 and grant it contemporaneous with the announcement of our decision herein.  *See In re Estate of Abraitis*, 8th Dist. Cuyahoga No. 104822, motion No. 506200.

mother. Abraitis argued to the IRS that the investment account belonged to his mother and that the probate court "had ruled that all of the assets held by him originated from and were the sole property of V. Abraitis" and that they were no longer under his control. *Abraitis v. United States*, N.D.Ohio No. 1:11-cv-2077, 2012 U.S. Dist. LEXIS 123073, *3 (June 12, 2012). Those tax matters were resolved adversely to Abraitis with a notice of levy. A final disposition of the tax case occurred in March 2013 after the United States Court of Appeals for the Sixth Circuit rejected his appeal. *See Abraitis v. United States*, 709 F.3d 641 (6th Cir.2013).

{¶4} With the tax matter finally adjudicated, Abraitis offered into probate a will that his mother executed in 1978. The will named Abraitis and his brother as equal beneficiaries of the estate. The court named Abraitis as the executor of the estate. An inventory of the estate listed a single asset — the investment account that the IRS ruled belonged to Abraitis — and noted that the funds were the subject of state[2] and federal tax proceedings.

{¶5} Abraitis's brother died in Florida in November 2013. The brother's will named his ex-wife as his personal representative and sole beneficiary. One day after a Florida court made the ex-wife the personal representative of the estate (and less than three weeks after the brother's death), Abraitis filed an application to probate a new will

---

[2] The state of Ohio had likewise issued income-tax assessments against Abraitis. *See Abraitis v. Testa*, 137 Ohio St.3d 285, 2013-Ohio-4725, 998 N.E.2d 1149.

— one that his mother executed in 1993. The 1993 will named Abraitis as the sole heir; the brother would take under the will only if he survived Abraitis. Abraitis then filed a motion to correct the estate inventory he filed with the court to remove the investment account from the estate on grounds that the investment account was "misidentified as an asset" and belonged to him. The court noted that removing the investment account from the estate inventory would reduce the estate assets to zero. In response to the motion to correct the inventory, the ex-wife filed a separate action to contest the 1993 will. *Abraitis-Newcomer v. Abraitis*, Cuyahoga P.C. No. 2104 ADV 195000.

**{¶6}** The court removed Abraitis as executor of the estate and named Fried the successor executor. The court found that Abraitis "acknowledged that he was aware in 2011 when he opened his mother's estate that there was a later will that was not presented for probate." The court also found that Abraitis had "no explanation for why he did not probate the most recent will at that time but that he put it away for later." And the court found that when Abraitis was asked what made him decide to apply for admission of the 1993 will, Abraitis said that "he did it because his brother had died" and he wanted to prevent the brother's ex-wife from being a beneficiary of his mother's estate.

**{¶7}** In addition to removing Abraitis as executor of his mother's estate, the court ordered him to deposit the investment account funds into an estate bank account. Abraitis not only failed to comply with the order, he refused to testify at a subsequent contempt hearing on the advice of his attorney, Brady. The court found Abraitis in

contempt and ordered him to serve ten days in jail. Despite the punishment, it appears that Abraitis never deposited any money into an estate account.

{¶8} These facts spawned a multitude of motions and filings in the probate court, this court, and the Ohio Supreme Court. As relevant here, Fried filed a complaint in the probate court alleging that Abraitis concealed estate assets. Abraitis defended by claiming that the IRS determined that the estate assets belonged to him, so he had no choice but to amend the inventory. The court rejected that assertion when finding Abraitis guilty of concealing estate assets. It found it unsurprising that the IRS determined Abraitis owned the investment account because the account was "listed in his name for all of the relevant tax years. What Abraitis cannot explain is how the [investment account] came to be in his name and from what sources the account was funded." The court's question about how the investment account was funded arose because Abraitis testified that "he has not worked or had taxable income from employment for many years, if ever." This suggested that he could not have been the source of the money: "What is clear however, is that Abraitis has never had taxable income from employment and therefore the monies that funded the [investment] account got there one way or another from his father, his mother, or both."

{¶9} Following the court's ruling that Abraitis concealed estate assets, Fried filed a motion for attorney fees against Brady under both Civ.R. 11 and R.C. 2323.51. The motion asserted that Brady and Abraitis frivolously listed the investment account as an estate asset when they initially opened the estate. When they amended the estate

inventory to list the investment account as an asset that belonged to Abraitis and not the estate, Fried maintained that he was forced to litigate their new position that the money belonged to Abraitis. In addition, Fried maintained that Brady acted in bad faith by filing the new will. The motion also noted that Abraitis was in violation of the court's order to return the investment account proceeds to the estate, a failure that forced the estate to file a separate motion seeking relief from the concealment of the asset. The motion claimed that the estate had incurred reasonable attorney fees of $104,485 along with expenses of $1,214.59, to defend the frivolous conduct.

{¶10} The court granted the motion for attorney fees, making the following findings of fact:

> The Court finds that as a result of Sarunas Abraitis ' [sic] actions in this Estate case, all of which were done by and through his attorney, Catherine Brady, Fried was required to file two separate adversarial actions including a concealment action and a complaint for declaratory judgment. The Court further finds that Fried has also been required to defend against multiple appeals.

> \* \* \*

> The Court further finds that it has set out in other entries the factual history of this case which can be summarized as the concerted effort by Abraitis and Brady to convince the taxing authorities that funds listed in the inventory of this Estate belonged to the decedent only to argue to this Court that the money belongs to Abraitis after the tax cases were resolved.

> The Court finds that the actions taken by Abraitis and Brady, from the filing of the original inventory through the filing of several accounts, applications for attorney fees and attempted distributions are contrary to their current argument that the funds at issue belong to Abraitis. The Court finds that the arbitrary positions and actions of both have caused irreparable harm to the Estate and have resulted in extraordinary fees.

{¶11} After finding Fried's itemized statement of billable hours and rates charged reasonable, the court awarded attorney fees of $104,485 and expenses of $1,214.59.

{¶12} Civ.R. 11 states that "[e]very pleading, motion, or other document of a party represented by an attorney shall be signed by at least one attorney of record * * *." An attorney's signature "constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay."

{¶13} R.C. 2323.51(B)(1) applies more broadly than Civ.R. 11 and permits the court to award attorney fees and costs to any party adversely affected by frivolous conduct of another party or that party's attorney, even if that conduct is not related to a pleading, motion, or other document. "Frivolous conduct" is defined by R.C. 2323.51(A)(2) as, among other things, conduct that serves to harass or maliciously injure another party to a civil action; conduct that is not warranted under existing law and cannot be supported by a good faith argument for an extension or reversal of existing law; or conduct that consists of allegations or factual contentions that have no evidentiary support or are not likely to have evidentiary support after a reasonable opportunity for further investigation.

{¶14} Civ.R. 11 uses a "subjective standard" of "bad faith" that goes beyond mere bad judgment; it sanctions conduct amounting to "dishonest purpose," "moral obliquity," "a breach of a known duty through some motive of interest or ill will," or "partakes of the

nature of fraud * * * with an actual intent to mislead or deceive another." *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 127 Ohio St.3d 202, 2010-Ohio-5073, 937 N.E.2d 1274, ¶ 8. "Frivolous conduct, as contemplated by R.C. 2323.51(A)(2)(a), is judged under an objective, rather than a subjective standard * * *." *State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 571, 2015-Ohio-4915, 45 N.E.3d 987, ¶ 15, citing *State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, 957 N.E.2d 19, ¶ 21.

{¶15} Under both Civ.R. 11 and R.C. 2323.51, we review a trial court's decision to award sanctions for an abuse of discretion. If competent, credible evidence exists to support an award of sanctions, the award must stand. *Striker* at ¶ 9; *DiFranco* at ¶ 13. In addition, the abuse of discretion standard means that we cannot substitute our judgment for that of the trial court. *State ex rel. Bardwell* at ¶ 9, citing *State ex rel. Grein v. Ohio State Hwy. Patrol Retirement Sys.*, 116 Ohio St.3d 344, 2007-Ohio-6667, 879 N.E.2d 195, ¶ 1.

{¶16} Brady argues, without relevant citation to authority, that the probate court had no jurisdiction to award sanctions under R.C. 2323.51 because the statute applies only to "civil" actions and probate court matters are "special proceedings."

{¶17} Probate matters are "special proceedings" as that term is used for purposes of the final order statute, R.C. 2505.02. *Schwartz v. Tedrick*, 2016-Ohio-1218, 61 N.E.3d 797, ¶ 11 (8th Dist.). But basically, probate matters are civil in nature because they do not involve the kind of penal sanctions imposed on criminal defendants. *Hill v. Urbana*, 79 Ohio St.3d 130, 137, 679 N.E.2d 1109 (1997). R.C. 2323.51(A)(1)

references "conduct" in the context of filing a "civil action." Probate courts have, without question as to their authority to do so, awarded sanctions for frivolous conduct under authority of R.C. 2323.51. *See, e.g.*, *Soter v. Beyoglides (In re of the Guardianship of Lewis)*, 2d Dist. Montgomery No. 22252, 2008-Ohio-3486; *In re Guardianship of Wernick*, 10th Dist. Franklin No. 06AP-263, 2006-Ohio-5950. The argument that the probate court had no authority to impose sanctions under R.C. 2323.51 is baseless.

**{¶18}** We first consider whether the court erred by imposing sanctions against Brady under R.C. 2323.51.

**{¶19}** When granting the motion for sanctions, the court found that Brady engaged in frivolous conduct that it summarized as "the concerted effort * * * to convince the taxing authorities that funds listed in the inventory of the Estate belonged to the decedent only to argue to this Court that the money belongs to Abraitis after the tax cases were resolved."

**{¶20}** Brady maintains that she acted properly by listing the investment account as an estate asset at the same time that Abraitis was arguing to the IRS that the investment account belonged to his mother; she claims it was only after the IRS determined that the investment account actually belonged to Abraitis that she filed a new inventory to reflect that determination.

**{¶21}** This argument ignores that Brady filed court documents representing that the investment account belonged to Abraitis long before she filed the initial estate

inventory listing the investment account as an estate asset. The court heard undisputed evidence that Abraitis was the only person named on the investment account. Nor was there any question that the investment account had been funded by the proceeds of another investment account held by both Abraitis and his mother as joint tenants. Abraitis came into sole possession of the mother's investment account "by way of a power of attorney he held from the mother." This fact had been conceded in a January 2013 motion to correct the inventory which stated that the funds in the mother's investment account were "transferred outright to Sarunas Abraitis" in 2003. This statement contradicted a position maintained in the IRS matter where it was claimed that the money belonged to the mother's estate — the district court found that Abraitis represented to the IRS that "the Cuyahoga County Probate Court had ruled that all of the assets held by him originated from and were the sole property of [his mother]." *Abraitis v. United States*, N.D.Ohio No. 1:11-cv-2077, 2012 U.S. Dist. LEXIS 123073, *3 (June 12, 2012). The IRS rejected that position because "the assets in question were in an account under Abraitis's name and social security number * * *." *Id*. at *4.

{¶22} Abraitis reaffirmed his sole ownership of the investment account in a November 2013 complaint for a writ of prohibition filed in this court. That complaint alleged that a guardianship over Abraitis's mother was closed in March 2009, "with no assets remaining." *See Abraitis v. Gallagher*, 8th Dist. Cuyahoga No. 101037, 2014-Ohio-2987, complaint at ¶ 9. The record shows that Abraitis was, for a time, his

mother's guardian. If the investment account truly belonged to his mother, the guardianship estate inventory would have reflected that fact and listed it as an estate asset.

{¶23} It bears noting here that Abraitis was removed from his position as guardian over his mother and was later sued by the successor guardian for concealment of assets. The concealment case settled in February 2005. A January 2014 motion to correct the inventory stated that the concealment case determined that the mother's account "was an asset owned by Sarunas Abraitis, outright."

{¶24} Brady represented Abraitis throughout all of the proceedings we have described. Those proceedings spawned litigation with the IRS, in the federal courts, and at all levels of the state courts. The legal arguments offered by Brady in these matters have been criticized as "specious (and often incomprehensible)," *Abraitis v. Testa*, 137 Ohio St.3d 285, 2013-Ohio-4725, 998 N.E.2d 1149, at ¶ 4, to doing "little to clarify Abraitis's position[.]" *Abraitis v. United States*, N.D.Ohio No. 1:11-cv-2077, 2012 U.S. Dist. LEXIS 123073, *5 (June 12, 2012). And the probate court could agree with the district court's finding that Brady raised "arguments that contradict positions taken in other pleadings[.]" *Id*. The court acted within reason to find that Brady acted frivolously by taking inconsistent positions when representing Abraitis in the estate matters.

{¶25} We reach a similar conclusion with respect to the award of sanctions levied against Brady under Civ.R. 11.

{¶26} The preceding discussion shows that Brady was subjectively aware that she filed an estate inventory which claimed that the investment account was an estate asset

even though she claimed years earlier that the money in the investment account had been transferred to Abraitis. To be sure, at the time she filed the estate inventory, she was representing Abraitis in tax proceedings with the IRS in which she similarly argued that the mother owned the investment account. But as subsequent filings in the probate court made clear, Brady asserted as early as 2005 that Abraitis was the sole owner of the investment account — she claimed in a January 2014 motion to correct the inventory that the concealment action filed by the mother's successor guardian "determined that the asset was owned by Sarunas Abraitis, outright, and that matter was dismissed with prejudice at plaintiff's costs [sic]." Brady doubled-down on this assertion by stating that the settlement agreement also addressed and settled the ownership of the investment account in his favor. All of this occurred years before Abraitis opened his mother's estate and filed an initial inventory claiming that the investment account was an estate asset.

{¶27} Brady filed inventories and motions that she knew were unsupported by the record. Those acts spawned needless and expensive litigation that required Fried's response. The court acted rationally by finding that Brady's inconsistencies with the positions she took during the litigation amounted to bad faith.

{¶28} We next address Brady's arguments relating to the amount of fees and costs awarded. She first argues that the court erred by awarding Fried attorney fees and expenses for professional services rendered by him in our court. We reject this assertion because R.C. 2323.51(B)(1) states that "[t]he court may assess and make an award to any

party to the civil action *or appeal* who was adversely affected by frivolous conduct[.]" (Emphasis added.) *See also Bilbaran Farm, Inc. v. Bakerwell, Inc*., 5th Dist. Knox No. 14CA07, 2014-Ohio-4017, ¶ 35.

{¶29} Brady next argues that the court erred by awarding Fried his expenses. She maintains that Fried failed to authenticate or properly introduce into evidence the claimed expenses. But Brady failed to object on this basis at the hearing and has forfeited the argument on appeal.

{¶30} Brady complains that the court erred by failing to require Fried to verify the amounts requested under oath. We have rejected this type of argument in the context of Civ.R. 11, finding that the trial court has no obligation to hear sworn evidence in awarding attorney fees. *Brady v. Hickman & Lowder Co.*, 8th Dist. Cuyahoga Nos. 83041 and 83989, 2004-Ohio-4745, ¶ 30, citing *R.C.H. Co. v. 3-J Machining Serv*., 8th Dist. Cuyahoga No. 82671, 2004-Ohio-57.

{¶31} Brady argues that the amount of attorney fees awarded "shocks the conscience." Certainly, the amount of attorney fees ordered are high, but they were substantiated in Fried's fee statement. As we earlier noted, Brady has relentlessly litigated estate issues in this case. By doing so, she forced Fried to respond. This greatly escalated the number of hours he billed.

{¶32} Brady also argues that Fried failed to "mitigate damages." She characterizes Fried as engaging in "a blitzkrieg of expensive countermeasures while ignoring some of the basic tasks associated with being an administrator" and that he failed

to contact Brady "to strike deficient filings[.]" Brady cites no authority for the proposition that Fried had an obligation to mitigate his fees. And it is difficult to understand why Brady thinks that efforts by Fried to minimize the cost of litigation would have been successful. The conduct at the heart of the court's decision to award attorney fees was existential to the manner in which Abraitis and Brady pursued their claims.

**{¶33}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the probate division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MELODY J. STEWART, JUDGE

MARY EILEEN KILBANE, P.J., and
EILEEN T. GALLAGHER, J., CONCUR