CROWN COMMUNICATION, INC., ET AL., APPELLANTS, *v.* TESTA,

TAX COMMR., APPELLEE.

[Cite as *Crown Communication, Inc. v. Testa,* 136 Ohio St.3d 209,

2013-Ohio-3126.]

*Taxation—Personal property—Appeal—Procedure—R.C. 5703.51(D)—R.C. 5711.31—Final assessments by tax commissioner appealable directly to Board of Tax Appeals—Effect of tax commissioner's erroneous instruction to taxpayer that review of final assessments is obtained through petition for reassessment to tax commissioner—Taxpayer has option in such a case to treat final assessment as preliminary and to obtain further review by filing petition for reassessment.*

(No. 2012-0780—Submitted June 4, 2013—Decided July 23, 2013.)

APPEAL from the Board of Tax Appeals, No. 2009-A-3187.

————————————

**KENNEDY, J.**

**{¶ 1}** Crown Communication, Inc., and Crown Castle GT Company (collectively, "Crown") appeal from a decision of the Board of Tax Appeals ("BTA") that affirmed the tax commissioner's final determination of a personal-property tax assessment for tax year 2006. The tax commissioner and the BTA both held that Crown had not timely pursued an appeal from final-assessment certificates previously issued by the tax commissioner. Under this determination, the commissioner lacked jurisdiction to reach the merits of Crown's petition for reassessment and the BTA lacked jurisdiction to reach the merits of Crown's challenge to the assessment on appeal.

**{¶ 2}** Before the court, Crown asserts that the BTA did possess jurisdiction to reach the merits on appeal because the tax commissioner misled

Crown by sending the wrong instructions for appeal with the final-assessment certificates. Crown advances four propositions of law:

Proposition of Law No. 1: Until proper written instructions explaining the steps required to perfect a tax appeal are provided or the taxpayer waives his right to receive the instructions, any personal property assessment remains preliminary. R.C. 5703.51(D) (applied and followed).

Proposition of Law No. 2: If the tax commissioner mails an assessment labeled as final but then encloses the wrong appellate instructions, he has created an ambiguity and the taxpayer may treat the assessment as either preliminary or final.

Proposition of Law No. 3: When the tax commissioner provides advice to taxpayers, he must not affirmatively mislead taxpayers and, if he does, he is estopped from relying on any error that he induced.

Proposition of Law No. 4: If a taxpayer pays a disputed assessment based upon his right to prosecute a refund claim, the state may not, without violating the taxpayer's right to due process of law, eliminate the taxpayer's ability to prosecute the claim by providing erroneous appellate instructions.

{¶ 3} We reject Crown's estoppel theory set forth in the third proposition of law and do not reach its due process argument in the fourth proposition of law. We also disagree with Crown's first proposition of law, which would have the effect of holding assessments open indefinitely.

{¶ 4} We do agree with Crown's second proposition of law. We hold that by labeling the assessment as *final* while also including instructions for

appealing a *preliminary* assessment, the tax commissioner conferred on Crown the option to treat the assessment as either preliminary or final. Although Crown has not articulated a detailed argument in support of this proposition, our review of the statutes and the case law persuades us that Crown's actions in following the appeal instructions preserved the jurisdiction of both the tax commissioner and the BTA to consider the merits of Crown's challenge to the assessment.

{¶ 5} Because Crown had the option to treat the assessment as preliminary, and because Crown timely pursued review first by the Department of Taxation and then by the BTA, we reverse the BTA's decision and remand the cause for further proceedings.

### Facts and Procedural History

{¶ 6} Crown, which owns cellular telephone towers in Ohio, was subject to an increased personal-property tax assessment for tax year 2006. Despite multiple efforts to obtain review of the increase in its assessment, Crown ultimately faced a dismissal on jurisdictional grounds without any further consideration of the merits of its claim.

{¶ 7} In late May 2008, two years after Crown filed its 2006 tax return, the tax commissioner issued amended preliminary-assessment certificates for tax year 2006, which increased the listed value of the cell towers. By letter dated August 7, 2008, shortly before the increased assessment would have become final and uncontestable under R.C. 5711.25, Crown disputed the increase by requesting a final assessment. In May of the following year, the commissioner issued final-assessment certificates, which did not reduce the assessment as requested.

{¶ 8} With the final-assessment certificates, the commissioner included instructions for appealing the assessment. Crown asserts that the instructions it received called for filing a petition for reassessment with the tax commissioner. This is the correct procedure for obtaining review of a *preliminary* assessment

under R.C. 5711.31. However, the issuance of a *final* assessment is appealable directly to the Board of Tax Appeals pursuant to R.C. 5711.26 and 5717.02.

{¶ 9} Instead of appealing to the BTA, Crown followed the instructions and filed a petition for reassessment on July 10, 2009. Internal documents of the Department of Taxation noted that Crown had "appealed Final Assessment to the Tax Commissioner" and that Crown "should [have] appeal[ed] to BTA" and contained the notation "Docket to Dismiss per-JAN 7/17/09." Thus, the commissioner was aware of Crown's mistake. Nevertheless, instead of notifying Crown of the defect, the commissioner issued a letter dated July 20, 2009, which acknowledged the filing and assigned a case number, implying that the commissioner intended to conduct a substantive review of the petition.

{¶ 10} Events showed that the commissioner had no such intention. On September 8, 2009, the commissioner issued a final determination dismissing the petition. The commissioner concluded that because the assessment had been final rather than preliminary, Crown should have appealed to the BTA.

{¶ 11} When Crown appealed the final determination to the BTA, the commissioner moved to affirm, arguing that the BTA had no jurisdiction to consider the appeal because it was untimely filed. Crown's appeal had not been taken within 60 days of the issuance of the final-assessment certificates as required by R.C. 5717.02. The BTA agreed and affirmed the dismissal of Crown's petition.

{¶ 12} In opposing the commissioner's motion at the BTA, Crown offered the affidavit of Carmen Ospina. She asserted that she was associated with a property-tax consultancy and that since 2006, she had been an authorized representative of Crown. The affidavit recited that on May 22, 2009, Crown received the final assessments and that each of the assessments included the same attachment, entitled "Notice to Taxpayer," a copy of which Ospina attached as an exhibit. That notice instructs the taxpayer who wishes to contest the increased

value to file a petition for reassessment with the tax commissioner, not an appeal to the BTA.

{¶ 13} The tax commissioner filed a reply brief in response, but that reply does not challenge the Ospina affidavit or deny her assertion that the wrong instructions had been sent. Instead, the commissioner argues that even if the instructions were wrong, Crown has no recourse, because estoppel cannot apply against the state. Attached to the reply brief was an affidavit from Deborah Pearson, a longtime Taxation Department employee responsible for printing and preparing the final-assessment certificates in the Crown case. The affidavit recited that "[a]s part of the preparation, instructions regarding the appeal of the assessments were to be included in the envelope. See attached Ex. 1 (Notice to Taxpayer)." The attached "Notice to Taxpayer" instructs the aggrieved taxpayer to appeal directly to the BTA. She also testified that it had been her practice, as well as the Department of Taxation's "long-standing, established administrative practice and policy, to send the taxpayer information in writing of the steps necessary to appeal the final assessment to the Board of Tax Appeals." Notably, Pearson's affidavit does *not* state that the attached "Notice to Taxpayer" was in fact the form that was sent to Crown. Thus, the Pearson affidavit does not effectively controvert the Ospina affidavit.[1]

{¶ 14} The BTA predicated its decision on Crown's assertion that the commissioner had transmitted the wrong appeal instruction and then considered whether that error by the commissioner allowed Crown to obtain review on the merits despite the untimely appeal. *Crown Communication, Inc. v. Levin*, BTA

---

1. At oral argument, counsel for the tax commissioner responded to the question "You didn't object in any way to the evidence below" by saying, "That's actually not true." What counsel proceeded to refer to at oral argument was the Pearson affidavit, which was the commissioner's attempt to controvert the Ospina affidavit. In fact, no objection of any kind was lodged to the Ospina affidavit. Obviously, it is one thing to object to an opponent's evidence, and quite another to offer contrary evidence of one's own.

No. 2009-A-3187, 2012 WL 1257412 (Apr. 5, 2012). Because Crown relied on an estoppel theory, the BTA resolved the case against Crown by considering and rejecting that theory. The BTA did not question the assertion that the commissioner had in fact transmitted the wrong instructions.

{¶ 15} In rejecting the estoppel theory, the BTA distinguished *Ormet Corp. v. Lindley,* 69 Ohio St.2d 263, 431 N.E.2d 686 (1982), which Crown had cited as authority for an exception to the rule against estoppel. The BTA noted that *Ormet* involved a long-standing administrative practice by the commissioner, not a single instance of sending a misleading communication. Because of the general rule that estoppel does not apply against the state, *id*. at *2, quoting *Sekerak v. Fairhill Mental Health Ctr.*, 25 Ohio St.3d 38, 39, 495 N.E.2d 14 (1986), and because Crown had not brought itself within the narrow *Ormet* exception, the BTA ordered that the tax commissioner's dismissal for lack of jurisdiction be affirmed.

## Analysis

{¶ 16} We affirm BTA decisions if they are "reasonable and lawful." *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14. Since the BTA is responsible for determining factual issues, we will affirm the BTA's findings if they are supported by reliable and probative evidence. *Id*. But the question before us is an issue of law, which we review de novo. *Toledo v. Levin*, 117 Ohio St.3d 373, 2008-Ohio-1119, 884 N.E.2d 31, ¶ 26, fn. 3; *Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035, 942 N.E.2d 1054, ¶ 10.

### A. There was no plain error in the BTA's reliance
### on the Ospina affidavit

{¶ 17} The tax commissioner contests the evidentiary basis for Crown's jurisdictional argument. The commissioner challenges Ospina's assertion in her affidavit that the final assessments arrived at Crown with the wrong appeal

instructions attached. The commissioner asserts that Ospina's affidavit cannot have been from personal knowledge because the assessments were delivered directly to Crown, not to Ospina. Thus, she could have learned of the contents of the mailing only from a third person.

{¶ 18} The tax commissioner's contentions in this regard are unavailing. Although the Ospina affidavit may fall short of the ideal, the tax commissioner did not object to the affidavit in the proceedings before the BTA. Because the evidentiary challenge has thus been waived, the court will correct only a plain error. *See Plain Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 130 Ohio St.3d 230, 2011-Ohio-3362, 957 N.E.2d 268, ¶ 20.

{¶ 19} There is no plain error in relying on the uncontroverted affidavit of a taxpayer's consultant and representative with respect to the content of tax documents used in processing a tax appeal, particularly when the document is attached and authenticated. Nor can the commissioner claim the benefit of the presumption that a public official has duly performed the function that the law requires. *Toledo v. Levin*, 117 Ohio St.3d 373, 2008-Ohio-1119, 884 N.E.2d 31, ¶ 28. Crown has rebutted the presumption that the commissioner sent the proper instructions by showing that the wrong instructions were sent.

### B. The BTA correctly rejected Crown's estoppel argument

{¶ 20} On appeal, Crown's third proposition of law advances its estoppel argument. We find that the BTA correctly rejected it.

{¶ 21} In general, a taxpayer may not apply estoppel against the state. *Gen. Motors Corp. v. Limbach*, 67 Ohio St.3d 90, 92, 616 N.E.2d 204 (1993) (the court has "consistently held that equity does not apply to the state as to taxing statutes"), citing *Recording Devices, Inc. v. Bowers*, 174 Ohio St. 518, 190 N.E.2d 258 (1963), paragraph one of the syllabus (no estoppel against the state under a taxing statute). Notwithstanding that general disfavor of equitable relief in tax cases, we have in a very limited context applied a kind of estoppel against

the state. *See Ormet*, 69 Ohio St.2d 263, 431 N.E.2d 686, and *Recording Devices.* In both *Ormet* and *Recording Devices*, the tax commissioner had in writing committed himself over an extended period to a particular construction of tax law as applied to the taxpayer; this court held in each case that the commissioner could not change position and then retroactively assess tax on transactions that had previously been found by the commissioner to be exempt.

{¶ 22} The BTA correctly determined that the doctrine of those cases does not apply to this case. There was no retroactive assessment based on a change in the tax commissioner's long-held view on a matter of tax law.

### C. The *Sun Refining* doctrine does not apply, because Crown received notice of the assessment plus instructions for appeal

{¶ 23} As an alternative argument, Crown asserts under its first proposition of law that the 60-day period for appealing the final-assessment certificates to the BTA never began to run because the wrong appeal instructions were sent. In support, Crown cites *Sun Refining & Marketing Co. v. Brennan*, 31 Ohio St.3d 306, 511 N.E.2d 112 (1987).

{¶ 24} In that case, a state agency sent its decision in uncertified form to the corporation's attorney, rather than sending a certified copy to the corporation as required by R.C. 119.09. The corporation appealed. When the agency later complained that the appeal was untimely, the corporation pointed to the agency's failure to send a certified copy to the affected party as required by R.C. 119.09 and argued that agency compliance with the statute is a condition precedent to the commencement of the appeal period. This court agreed and held that the time for appealing from the agency decision would not begin to run until the agency complied with R.C. 119.09.

{¶ 25} *Sun Refining* is inapposite. There is no contention that the Department of Taxation failed to properly serve its final assessment on the affected party in this case, nor does this case involve R.C. Chapter 119. Instead,

this case presents the incongruity of labeling the assessment as final while providing an appeal instruction as though the assessment were preliminary under R.C. Chapter 5711. Crown obtained both notice of the assessment and instructions for appeal, which it followed. As discussed below, Crown's compliance with those instructions preserved jurisdiction over its challenge to the assessment.

{¶ 26} Additionally, there is a practical reason for not applying *Sun Refining* in this context. It is important not only for the taxpayer but the local taxing districts for tax assessments to attain finality: the taxpayer needs to know the extent of its obligation, and local taxing authorities need to know how much revenue they have. Applying the *Sun Refining* doctrine would have the negative effect of holding the assessment open for an indefinite period, which would thwart the important interest in achieving finality.

### D. Under the tax statutes and administrative-law principles, Crown had the option to treat the assessment as preliminary

{¶ 27} Crown's second proposition of law states that it had the option of "treat[ing] the assessment as either preliminary or final." Although Crown has not provided a detailed argument in support of this proposition, our review of the statutes and the case law persuades us that Crown's actions in following the appeal instructions preserved the jurisdiction, both of the tax commissioner and the BTA, to consider the merits of Crown's challenge to the assessment. Crown's failure to fully articulate this argument does not by itself prevent us from considering it, because we exercise plenary authority to consider issues that concern the jurisdiction of the tax tribunals. *See Elyria v. Lorain Cty. Budget Comm.*, 117 Ohio St.3d 403, 2008-Ohio-940, 884 N.E.2d 553, ¶ 13, citing *Colonial Village Ltd. v. Washington Cty. Bd. of Revision*, 114 Ohio St.3d 493, 2007-Ohio-4641, 873 N.E.2d 298, ¶ 2; *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 124 Ohio St.3d 27, 2009-Ohio-5932, 918 N.E.2d

972, ¶ 17 (court possesses authority to consider an issue not specified in the notice of appeal because "[a]n issue that pertains to the BTA's jurisdiction to hear the merits of an appeal thereby pertains derivatively to our own jurisdiction"); *Brown v. Levin*, 119 Ohio St.3d 335, 2008-Ohio-4081, 894 N.E.2d 35, ¶ 23, fn. 4 (tax commissioner's failure to file cross-appeal to preserve jurisdictional objection does not prevent this court from considering issues bearing on the BTA's jurisdiction and, derivatively, our own); *Gaston v. Medina Cty. Bd. of Revision*, 133 Ohio St.3d 18, 2012-Ohio-3872, 975 N.E.2d 941, ¶ 12, fn. 1.

*1. By statute, the commissioner has authority to issue assessments and the obligation to provide correct appeal instructions*

**{¶ 28}** The preliminary assessment of the value of personal property is the value reported on the taxpayer's intercounty tax return showing the value of property in different taxing districts of different counties in Ohio. R.C. 5711.24. When administering the personal-property tax, the tax commissioner issues three types of assessments: a *preliminary* assessment based on the return, an *amended preliminary* assessment, or a *final* assessment. R.C. 5711.24; R.C. 5711.31; R.C. 5711.26.

**{¶ 29}** If the tax commissioner issues a preliminary assessment that makes changes to the taxpayer's reported taxable value, that is an "amended preliminary assessment," and the taxpayer has the right to file a "petition for reassessment," which initiates further review by the Department of Taxation itself. R.C. 5711.31. On the other hand, a *final* assessment may or may not make changes to the earlier assessments and, as its name suggests, it is the Department of Taxation's "last word" on value, which gives rise to a right of appeal to the BTA. R.C. 5711.26.

**{¶ 30}** When the tax commissioner issues an assessment, be it an amended preliminary assessment pursuant to R.C. 5711.31 or a final assessment pursuant to R.C. 5711.26, the commissioner has the obligation to furnish correct appeal instructions to the taxpayer. First, R.C. 5703.51(C)(2) requires the

commissioner to furnish, "[w]ith or before the issuance of an assessment," a "written description of the taxpayer's right to appeal the assessment and an explanation of the steps required to request administrative review by the commissioner." This provision refers to both the "taxpayer's right to appeal" and to "administrative review by the commissioner," and R.C. 5703.50(D)'s definition of "assessment" makes clear the legislative intent that the requirement apply to final assessments issued pursuant to R.C. 5711.26. Second, R.C. 5711.31 explicitly requires, in the context of a notice of an amended preliminary assessment, "instructions on how to petition for reassessment and request a hearing on the petition." The crucial question in this case is the jurisdictional effect of the commissioner's sending the wrong instructions.

### 2. *The taxpayer may rely on appeal instructions with respect to determining whether an assessment is preliminary or final*

{¶ 31} We hold that by including instructions for filing a petition for reassessment with an assessment that identified itself as "final," the commissioner conferred on Crown the option to follow the instructions and thereby treat the assessment as preliminary rather than final for appeal purposes.[2] There is no reason—and certainly nothing in the statutes—that compels us to make the taxpayer suffer adverse consequences because of the commissioner's own statutory transgressions.

{¶ 32} Potentially significant to our holding is R.C. 5703.51(H). That statute states that the commissioner's "failure * * * to comply with a provision of this section shall neither excuse a taxpayer from payment of any taxes shown to be owed by the taxpayer nor cure any procedural defect in a taxpayer's case." The tax commissioner reads this provision as meaning that omissions and errors committed by him have no jurisdictional significance; in other words, under the

---

2. Of course, Crown also had the option of treating the assessment as final and appealing directly to the BTA.

commissioner's view, a taxpayer relies on the appeal instructions that the tax commissioner is required to provide at its own peril. That Crown did not appeal directly to the BTA, contrary to the appeal instructions provided, constitutes an insuperable procedural defect, in the commissioner's view.

{¶ 33} It is certainly true that the statutes detail the means by which appeals may be perfected and that a taxpayer must follow the statutes to perfect an appeal properly. But the issue before us does not concern whether an appeal was perfected in accordance with statute; it concerns whether Crown had the option to treat the assessment as preliminary rather than final for purposes of obtaining further review.

{¶ 34} Contrary to the commissioner's argument, R.C. 5703.51(H) does not bar our holding. The commissioner's errors in giving appeal instructions cannot cure a procedural defect in the taxpayer's appeal, but that begs the question whether Crown's filing a reassessment petition, as it was instructed to do by the tax commissioner himself, constituted a procedural defect. Under our holding, it did not. Because there was no procedural defect to cure, R.C. 5703.51(H) does not apply.

*3. Under these circumstances, R.C. 5711.26 imposes an obligation*
*on the commissioner, but does not limit the taxpayer's right to review*

{¶ 35} It could be argued that because R.C. 5711.26 required the tax commissioner to issue a final, rather than a preliminary, assessment upon Crown's application, Crown may not treat the assessment as preliminary rather than final. We reject that argument. We reiterate that we will not inflict the adverse consequences of the tax commissioner's own violation of the statutes on the taxpayer.

{¶ 36} R.C. 5711.26 does state that the commissioner "shall * * * finally assess" personal property when a taxpayer has filed a petition for reassessment. That means that the commissioner had the obligation by statute in this case to

issue a final assessment rather than a preliminary one. But that obligation is intended to serve the interest of the taxpayer by releasing the case from the Department of Taxation and permitting the taxpayer to obtain review by the BTA. And the burden of properly issuing a final assessment—which by statute includes the burden of providing correct appeal instructions—falls squarely on the commissioner, not on the taxpayer.

{¶ 37} When the commissioner issued appeal instructions calling for the assessment to be treated as if it were preliminary and the taxpayer followed those instructions, the taxpayer did not suffer the loss of its right to obtain further review. To the contrary, Crown had a right to receive a final determination that would address the assessment and that Crown could then appeal to the BTA. On remand, the commissioner shall issue that determination. Crown will then have the right to appeal to the BTA, specifying whatever errors it perceives in the determination.

### 4. The tax commissioner's errors did not create a jurisdictional bar to further review of Crown's assessment

{¶ 38} Our holding in this case should be understood as an application of general principles of administrative law to the particular circumstances we confront here. As a general matter, an administrative determination remains within the jurisdiction of the administrative agency for at least the duration of the appeal period. *See Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.*, 28 Ohio St.3d 20, 502 N.E.2d 590 (1986), paragraph three of the syllabus. The procedures that relate to amended preliminary assessments under R.C. 5711.31 fall within this doctrine in the specific context of personal-property tax assessments.

{¶ 39} Indeed, with respect to tax assessments, the commissioner's authority is even broader: under R.C. 5703.05(H), the tax commissioner as tax assessor possesses the authority, "on the commissioner's own motion" and within "time limitations provided by law," to "review[], redetermin[e], or correct[] any

tax assessments" that have previously been issued. The tax commissioner has no authority to redetermine or correct existing assessments when (1) the assessments are under review on appeal from a determination of the commissioner or (2) further action is statutorily time-barred.

{¶ 40} These statutes confer a general power on the commissioner to reconsider the assessment (at least within the appeal period) after it has been issued. Under the particular circumstances of this case, the inclusion of the wrong appeal instructions, together with Crown's compliance, operated in the same way the reconsideration order did in *Hal Artz*: it preserved the commissioner's jurisdiction, and hence Crown's right to obtain review of the assessment by the BTA, once the commissioner issued the final determination. Because the statutes afford Crown a procedural remedy, we do not reach the constitutional due process argument under Crown's fourth proposition of law.

### Conclusion

{¶ 41} For the foregoing reasons, the BTA erred by determining that Crown had committed a fatal procedural error when it followed the appeal instructions furnished by the tax commissioner. We therefore reverse the decision of the BTA and remand to the tax commissioner with instructions to issue a final determination that addresses the assessment on the merits. Thereafter, Crown will have the right to appeal to the BTA in accordance with R.C. 5717.02.

Decision reversed

and cause remanded.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, FRENCH, and O'NEILL, JJ., concur.

_____

Buckingham, Doolittle & Burroughs, L.L.P., Steven A. Dimengo, Jason M. Weigand, and Richard B. Fry III, for appellants.

Michael DeWine, Attorney General, and Barton A. Hubbard and Sophia Hussain, Assistant Attorneys General, for appellee.

_____