Per Curiam.
*113 *420 {¶ 1} Appellant, Pi In The Sky, L.L.C., purchased an aircraft without paying sales or use tax on it and then leased it to its sole corporate member. When appellee, tax commissioner, assessed use tax against Pi In The Sky for the purchase, Pi In The Sky asserted that its act of leasing the aircraft for consideration constituted a resale for tax purposes, thereby making its purchase nontaxable under the definition of "retail sale," also known as the sale-for-resale exception. See R.C. 5739.01(E) and 5741.02(C)(2). The tax commissioner rejected this argument because, in his view, Pi In The Sky was not "engaging in business," R.C. 5739.01(E), within the meaning of the exception. This conclusion, in turn, led the tax commissioner to declare the lease a sham transaction under *114 R.C. 5703.56(A)(1). The Board of Tax Appeals ("BTA") affirmed, and Pi In The Sky has appealed. For the reasons that follow, we affirm the BTA's decision.
FACTS AND PROCEDURAL BACKGROUND
{¶ 2} Pi In The Sky is a single-member limited-liability company. According to its brief to the BTA, Pi In The Sky was created to hold an aircraft for lease and has engaged in no other business activity except for aircraft leasing. Pi In The Sky's single member is Mitchell's Salon and Day Spa, Inc. ("Mitchell's"), which operates several hair salons and spas in the Cincinnati area. The president of Mitchell's is Deborah Mitchell Schmidt, a licensed pilot.
{¶ 3} In December 2011, "Pi In The Sky, L.L.C./Deborah M. Schmidt" purchased an aircraft from an Indiana-based vendor for $1,217,460. Schmidt signed the purchase agreement. The agreement contains a space to reflect the amount of sales tax due on the transaction, and in that space, the phrase "Out of State" is typed. To help fund the purchase, Schmidt obtained a $973,963 loan in her individual capacity. The lender obtained a "commercial guaranty" from Pi In The Sky, by which Pi In The Sky guaranteed the payment of Schmidt's indebtedness.
{¶ 4} On May 14, 2012, the Federal Aviation Administration ("FAA") issued an aircraft bill of sale that identified Pi In The Sky as the aircraft's purchaser. That same day, Pi In The Sky, as lessor, and Mitchell's, as lessee, entered into a lease agreement for the aircraft. Schmidt signed the agreement on behalf of both Pi In The Sky and Mitchell's. Among other things, the lease granted Mitchell's nonexclusive use of the aircraft, required Mitchell's to provide for the aircraft's operation, maintenance, and storage, and prescribed a rental rate of $80 per flight hour. There is no dispute that the agreement is in the nature of a "dry lease," by which a lessor furnishes an aircraft-but not an operator-for use by a lessee.
Proceedings before the tax commissioner
{¶ 5} In November 2013, the tax commissioner issued a notice of use-tax assessment against Pi In The Sky for $68,426.50, representing unpaid taxes, interest, and a penalty.[1] Pi In The Sky petitioned for reassessment, asserting that its *421 purchase and lease of the aircraft to Mitchell's met the requirements of the *115 sale-for-resale exception. In an August 2015 final determination, the tax commissioner rejected Pi In The Sky's argument and upheld the assessment.
{¶ 6} The tax commissioner relied on three factors in concluding that Pi In The Sky was not "engaging in business," R.C. 5739.01(E), within the meaning of the sale-for-resale exception. First, the tax commissioner scrutinized Pi In The Sky's conduct. In the tax commissioner's view, Pi In The Sky was not engaged in the operation of a legitimate aircraft-leasing business because its single member was its only lessee and it never marketed or advertised the aircraft for lease to others. The tax commissioner also assigned significance to the fact that Pi In The Sky's address matched Schmidt's residential address, noting that without acquiring a visible business location, Pi In The Sky appeared disinclined to attract lessees.
{¶ 7} Second, the tax commissioner found the lease terms uncharacteristic of an arm's-length transaction, observing that while Mitchell's did not acquire a defined right to use the aircraft, it nevertheless bore the costs of operation, maintenance, and storage. Further, the tax commissioner found that the lease's rental rate of $80 per hour was so low that it would be impossible for Pi In The Sky to generate a revenue sufficient to service the monthly $6,461.43 loan payment and operate profitably. And the tax commissioner viewed Schmidt's decision to sign the lease on behalf of both Pi In The Sky and Mitchell's as evidence that no functional separation existed between lessor and lessee.
{¶ 8} The third factor considered by the tax commissioner was Schmidt's conduct in relation to the aircraft. The tax commissioner cited flight logs showing that the aircraft made 29 flights-primarily in the summer-to and from an airport near a lakefront home in northern Michigan owned by the "Deborah M. Schmidt Revocable Trust" as evidence of Schmidt's apparent personal use of the aircraft. Logs additionally showed that the aircraft made 43 Mitchell's-operated flights with zero passengers, leading the tax commissioner to infer that Schmidt was flying the aircraft herself. The tax commissioner questioned the business need for the aircraft, noting that all of Mitchell's locations are in the Cincinnati area. And he also found it unusual that Schmidt, a corporate officer, personally borrowed money to fund the purchase of a company asset.
{¶ 9} On account of all these factors, the tax commissioner further concluded that Pi In The Sky's lease to Mitchell's was a "sham transaction" under R.C. 5703.56(A)(1), because Pi In The Sky's "only motivation" for purchasing and leasing the aircraft "was to avoid taxation." Pi In The Sky appealed to the BTA.
BTA proceedings
{¶ 10} The parties waived a hearing (at the urging of Pi In The Sky), and thus, the BTA heard the case on the record certified to it by the tax commissioner *116 along with the parties' briefs. The BTA then affirmed the tax commissioner's final determination, reasoning that Pi In The Sky did not purchase the aircraft for the purpose of leasing it to others as part of a business enterprise. As part of its analysis, the BTA reasoned that by waiving a hearing, Pi In The Sky lost its opportunity to present testimony or other evidence to dispute the presumptive validity of the tax commissioner's findings. This appeal followed.
STANDARD OF REVIEW
{¶ 11} We will affirm a BTA decision that is reasonable and lawful. Satullo v. Wilkins , 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14. We apply *422 de novo review to the BTA's resolution of legal questions. Crown Communication, Inc. v. Testa , 136 Ohio St.3d 209, 2013-Ohio-3126, 992 N.E.2d 1135, ¶ 16. But we defer to the "BTA's determination of the credibility of witnesses and its weighing of the evidence subject only to an abuse-of-discretion review on appeal." HealthSouth Corp. v. Testa , 132 Ohio St.3d 55, 2012-Ohio-1871, 969 N.E.2d 232, ¶ 10.
DISCUSSION
{¶ 12} Pi In The Sky argues in this appeal that the BTA (1) misapplied the sale-for-resale exception and the sham-transaction statute, (2) erred in disregarding certain portions of its brief, and (3) erred in making certain discovery rulings. We address each argument in turn.
The sale-for-resale exception
{¶ 13} The term "sale," as defined by Ohio's sales-tax law, includes "transactions for a consideration in any manner, whether absolutely or conditionally, whether for a price or rental, in money or by exchange, and by any means whatsoever." R.C. 5739.01(B). To illustrate, a "sale" takes place when "title or possession, or both, of tangible personal property, is or is to be transferred, or a license to use or consume tangible personal property is or is to be granted." R.C. 5739.01(B)(1).
{¶ 14} An exception applies, however, when "the purpose of the consumer is to resell the thing transferred or benefit of the service provided, by a person engaging in business, in the form in which the same is, or is to be, received by the person." R.C. 5739.01(E). To paraphrase, "when the purchaser's intent in buying goods or services is to resell them to yet another purchaser without changing the goods or services in any way, the original purchase is not considered a 'retail sale' and is therefore not subject to sales tax."
*117 Satullo , 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, at ¶ 26. This provision is known as the ''sale-for-resale exception.'' Standards Testing Laboratories, Inc. v. Zaino , 100 Ohio St.3d 240, 2003-Ohio-5804, 797 N.E.2d 1278, ¶ 14. And under R.C. 5741.02(C)(2), "any sale not subject to the sales tax is likewise not subject to the use tax." Satullo at ¶ 26.
{¶ 15} The parties have framed the debate around the exception's "engaging in business" requirement, R.C. 5739.01(E). To satisfy this requirement, a taxpayer must show that it was engaging in an activity "with the object of gain, benefit, or advantage, either direct or indirect." R.C. 5739.01(F) (defining "business"). Bearing this directive in mind, we consider whether Pi In The Sky was engaging in business against the backdrop of the BTA's extensive findings of fact.
{¶ 16} In its decision, the BTA found that the arrangement between Pi In The Sky and its sole member, Mitchell's, was predicated on a lease agreement that lacked substance. The lease did not confer a defined term of use on Mitchell's, yet Mitchell's bore responsibility for virtually every cost associated with the aircraft's maintenance and operation. Pi In The Sky reserved the right to deny in its sole discretion any flight-scheduling request made by Mitchell's. The lease prescribed a rate of $80 per flight hour for an aircraft valued at $1,217,460. And Schmidt signed the lease on behalf of both Pi In The Sky and Mitchell's, which led the BTA to question the arm's-length nature of the transaction. In the BTA's view, a lease arrangement marked by these characteristics is "only feasible between two entities that are, practically speaking, one and the same." BTA No. 2015-2005, 2017 WL 1443843, *4 (Jan. 19, 2017).
{¶ 17} The peculiarities of this arrangement extend beyond the lease terms. The *423 BTA found that Pi In The Sky had no reported business location aside from Schmidt's residence and that no evidence supported Pi In The Sky's claim that leasing activity took place at the aircraft's hangar. The aircraft was never used by a third-party lessee, and there is no evidence that Pi In The Sky ever marketed the aircraft for lease. Many of the logged flights for the aircraft were to or from Schmidt's lakefront home in northern Michigan during the summer. And Schmidt's personal funds, rather than corporate funds, were used to purchase the aircraft.
{¶ 18} In view of these findings, which were made on an uncontroverted record, we determine that there is significant support for the BTA's conclusion that Pi In The Sky "did not purchase the subject aircraft for purposes of leasing it to others, as part of a business enterprise," id. at *5. Indeed, Pi In The Sky cannot point to any leasing activity aside from that which was undertaken through an agreement with its sole member that lacked substance and was of a doubtful arm's-length character. Under these circumstances, Pi In The Sky was not engaging in an activity with any "object of gain, benefit, or advantage" within *118 the meaning of R.C. 5739.01(F). Therefore, we conclude that it was not "engaging in business" as required by R.C. 5739.01(E).
{¶ 19} We are unpersuaded by Pi In The Sky's arguments to the contrary. In seeking to justify the aircraft's purchase and lease, Pi In The Sky claims that the ownership structure and leasing arrangement protect the privacy of passengers from publicly available flight data and lessen the financial and administrative burdens of aircraft ownership. The BTA rejected these arguments, concluding that they reinforced that Pi In The Sky's "sole basis for existence [was] to lease the aircraft, but only to one lessee, Mitchell's, the sole member of [ Pi In The Sky]." 2017 WL 1443843 at *5. We too reject these arguments, as they bear more on why Pi In The Sky was created rather than any gain, benefit, or advantage it purportedly has derived from leasing the aircraft to Mitchell's. Accord Devonair Ents., L.L.C. v. Dept. of Treasury , 297 Mich.App. 90, 101, 823 N.W.2d 328 (2012) (rejecting a taxpayer's similar arguments as "speak[ing] more to the reason [the taxpayer] was formed as a separate entity * * * than to any gain, benefit, or advantage [the taxpayer] acquired from its alleged business of leasing aircraft").
{¶ 20} We are also unconvinced by Pi In The Sky's claim that it satisfies the "engaging in business" requirement of the sale-for-resale exception because it holds a vendor's license authorizing it to make taxable sales and receives payments under the lease agreement. In emphasizing its vendor's license, Pi In The Sky has confused the privilege to perform a certain act with the actual performance of that act. See Black's Law Dictionary 1059 (10th Ed.2014) (a "license" is a publicly granted privilege, conditioned upon the payment of a fee, that enables the recipient to perform an otherwise impermissible act). And although the receipt of revenue might tend to support a taxpayer's engaging-in-business argument, the force of that argument is diminished significantly when, as here, the revenue is received under a lease lacking in substance and of a doubtful arm's-length character.
{¶ 21} Pi In The Sky next argues that the tax commissioner unjustifiably applied an unpromulgated "non-rule policy" by accounting for nonstatutory factors in issuing the assessment. We reject this argument both because the record certified by the tax commissioner does not contain the documents reflecting this alleged policy *424 and because Pi In The Sky does not cite, let alone analyze, any controlling authority addressing the issue of improper agency rulemaking. See Mason City School Dist. Bd. of Edn. v. Warren Cty. Bd. of Revision , 138 Ohio St.3d 153, 2014-Ohio-104, 4 N.E.3d 1027, ¶ 38 (declining to address an undeveloped argument). And we decline to address Pi In The Sky's allegation that the "non-rule policy" is unconstitutional because it was first raised in Pi In The Sky's reply brief. See Corrigan v. Illum. Co. , 151 Ohio St.3d 85, 2017-Ohio-7555, 86 N.E.3d 287, ¶ 11, fn. 1. *119 {¶ 22} In summary, Pi In The Sky has not carried its burden to show that it meets the requirements of the sale-for-resale exception. Therefore, we decline to address the parties' arguments concerning whether Pi In The Sky engaged in a sham transaction.
The BTA's refusal to consider portions of Pi In The Sky's brief
{¶ 23} Pi In The Sky next challenges the BTA's refusal to consider seven exhibits attached to Pi In The Sky's brief and its related written arguments. In its decision, the BTA noted that it had disregarded the documents because they had not been admitted at a hearing, not been made a part of the record certified by the tax commissioner, and not been submitted by consent of the tax commissioner.
{¶ 24} When an appeal is filed with the BTA from a final determination of the tax commissioner, the tax commissioner "shall certify to the board a transcript of the record of the proceedings before the commissioner * * * together with all evidence considered by the commissioner * * * in connection with the proceedings." R.C. 5717.02(D). The BTA "may order the appeal to be heard upon the record and the evidence certified to it by the commissioner * * *, but upon the application of any interested party the board shall order the hearing of additional evidence." R.C. 5717.02(E). "The purpose of hearings" before the BTA, according to the BTA's rules, "is to allow for the presentation of new evidence. Appeals will be decided upon the record developed before the lower tribunal unless a party requests a hearing and presents new evidence." Ohio Adm.Code 5717-1-16(A).
{¶ 25} In this case, not only did Pi In The Sky elect to waive a hearing before the BTA, but its proposal to submit supplemental evidence without a hearing was submitted to, and rejected by, the tax commissioner. The BTA thus confronted a situation in which a party sought to rely on information that had not been admitted either at a hearing or by stipulation of the parties. Under these circumstances, we cannot say that the BTA acted unreasonably or unlawfully in following Ohio Adm.Code 5717-1-16(A) by confining itself to the materials that the tax commissioner had certified pursuant to R.C. 5717.02(D).
{¶ 26} Nor did the BTA's ruling run afoul of due process. Pi In The Sky claims that the BTA should have been more precise in identifying the written arguments that it had disregarded. But the BTA expressly stated that it would not consider any documents that had not been certified to it by the tax commissioner or any arguments related to such documents. And because Pi In The Sky waived a BTA hearing, it cannot now complain that it was denied an opportunity to be heard on the disregarded information.
{¶ 27} Pi In The Sky objects in particular to the BTA's refusal to consider exhibit No. 7, which contains an out-of-state decision, an FAA letter and technical *120 guide, two articles from a legal periodical, and one news article. According to Pi In The Sky, because these documents are more in the nature of legal authority than *425 factual evidence, the BTA should have considered them even though they had not been included in the certified record. But even assuming that the BTA erred in disregarding exhibit No. 7, any error was harmless because the exhibit does not contain any rules of law that the BTA was required to follow. Moreover, we think that the information contained in the exhibit speaks more to the reasons for Pi In The Sky's formation, not whether it was engaging in business within the meaning of the sale-for-resale exception.
The BTA's discovery rulings
{¶ 28} Pi In The Sky also argues that the BTA erred in refusing to grant its motion to compel and motion to deem certain matters admitted. The BTA generally follows the Rules of Civil Procedure for discovery purposes. Ohio Adm.Code 5717-1-12(A). We review the BTA's resolution of discovery-related disputes for an abuse of discretion. HK New Plan Exchange Property Owner II, L.L.C. v. Hamilton Cty. Bd. of Revision , 122 Ohio St.3d 438, 2009-Ohio-3546, 912 N.E.2d 95, ¶ 16.
{¶ 29} Initially, we find no error in the BTA's refusal to allow Pi In The Sky to conduct discovery into the tax commissioner's view of what would constitute a fair market value for the aircraft's lease rate. Nothing in the record indicates that the tax commissioner's views and opinions constitute the type of evidence necessary to establish that the lease rates did or did not in fact conform to the market. Moreover, Pi In The Sky could have presented its own evidence at a BTA hearing to show that the rate was indicative of fair market value; however, it forfeited this opportunity by waiving a BTA hearing. Under these circumstances, Pi In The Sky did not suffer prejudice from the BTA's ruling. See Ashcraft v. Univ. of Cincinnati Hosp. , 10th Dist. Franklin No. 02AP-1353, 2003-Ohio-6349, 2003 WL 22827536, ¶ 27.
{¶ 30} Pi In The Sky next faults the tax commissioner's discovery responses relating to certain documents that Pi In The Sky alleges represent the tax commissioner's policies on the taxation of aircraft. Pi In The Sky claims that the responses are deficient insofar as they do not indicate the documents' vintage, authorship, or source materials. We find this contention meritless. Pi In The Sky was afforded the opportunity to place these documents into the record but chose not to when it waived a BTA hearing. Having failed to place the documents into the record, Pi In The Sky has forfeited any argument that faults the tax commissioner's discovery responses relating to the documents.
{¶ 31} The remainder of Pi In The Sky's claims concerning its motion to compel generally fault the tax commissioner's bases for withholding information. But as a predicate to addressing these claims, we must be given the materials *121 necessary to make a decision. In a fact-bound, discovery-related challenge such as this one, our ability to discern an abuse of discretion is hampered when the party claiming error has failed to identify in its argument the topic of the discovery question, the allegedly deficient response, and supporting citations. See State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees , 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 13. Pi In The Sky's "failure to offer relevant citations to the record to support its appellate arguments is a fatal flaw," In re Fuel Adjustment Clauses for Columbus S. Power Co. & Ohio Power Co. , 140 Ohio St.3d 352, 2014-Ohio-3764, 18 N.E.3d 1157, ¶ 13.
{¶ 32} Pi In The Sky next claims that the BTA erred in denying its motion to deem certain matters admitted when the tax commissioner responded to *426 Pi In The Sky's requests for admission one day past the deadline for responding. "Once a party fails to timely respond to * * * requests for admissions, the defaulted admissions become facts." Farah v. Chatman , 10th Dist. Franklin No. 06AP-502, 2007-Ohio-697, 2007 WL 512526, ¶ 10 (interpreting Civ.R. 36). In light of this rule, we question the BTA's denial of Pi In The Sky's motion. Nevertheless, we conclude that any error arising from the BTA's ruling was harmless. The only request that Pi In The Sky's brief discusses with any specificity is a request that the tax commissioner admit that Pi In The Sky possessed a vendor's license when it purchased the aircraft. As we have stated, Pi In The Sky's possession of a vendor's license does not, by itself, establish that it was engaging in business within the meaning of the sale-for-resale exception. Thus, deeming this matter an admitted fact would not have changed this case's outcome. Because Pi In The Sky's brief does not specifically address the contents of its other requests for admission, we will not speculate on the outcome of the case had the BTA deemed those matters admitted.
CONCLUSION
{¶ 33} For the foregoing reasons, we affirm the BTA's decision.
Decision affirmed.
O'Connor, C.J., and O'Donnell, French, Fischer, DeWine, and DeGenaro, JJ., concur.
Kennedy, J., concurs in judgment only.

In its reply brief, Pi In The Sky challenges the imposition of the penalty. Because this challenge was first raised in a reply brief, we conclude that it has been waived. See Corrigan v. Illum. Co. , 151 Ohio St.3d 85, 2017-Ohio-7555, 86 N.E.3d 287, ¶ 11, fn. 1.