[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Willacy v. Cleveland Bd. of Income Tax Rev.*, Slip Opinion No. 2021-Ohio-1734.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-1734

WILLACY, APPELLANT, *v.* CLEVELAND BOARD OF INCOME TAX REVIEW ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Willacy v. Cleveland Bd. of Income Tax Rev.*, Slip Opinion No. 2021-Ohio-1734.]**

*Municipal income tax—Stock options employee received as compensation while working in Cleveland were not exercised until after employee retired and moved out of state—Exercise of stock options generated taxable qualifying wages under Cleveland Codified Ordinances—Court defers to Board of Tax Appeals' factual findings when they are supported by reliable and probative evidence—Equitable estoppel is not ordinarily available as a remedy against tax assessments—Cleveland properly imposed income tax on the stock-option income.*

(No. 2020-0795—Submitted March 2, 2021—Decided May 25, 2021.)

APPEAL from the Board of Tax Appeals, No. 2018-758.

————————————

**Per Curiam.**

{¶ 1} This is the second appeal involving Cleveland's taxation of income that appellant, Hazel M. Willacy, received by exercising stock options. Willacy earned the options in 2007 from her former employer when she was working in Cleveland, but she did not realize any income until she exercised the options after she moved from Ohio and had stopped working in the city. In *Willacy v. Cleveland Bd. of Income Tax Rev.*, 159 Ohio St.3d 383, 2020-Ohio-314, 151 N.E.3d 561 ("*Willacy I*"), we held that Cleveland properly taxed the stock-option income that Willacy realized in 2014 and 2015. This appeal involves the stock-option income that she realized in 2016.

{¶ 2} The Board of Tax Appeals ("BTA") found that Cleveland's taxation of Willacy's 2016 income was proper. Willacy appeals the BTA's decision, raising three propositions of law. Because Willacy's propositions of law lack merit, we affirm the BTA's decision.

## Facts and Procedural History

{¶ 3} In 2007, when Willacy was working in Cleveland, the Sherwin-Williams Company granted her options to purchase 2,715 shares of Sherwin-Williams common stock. Willacy retired and moved to Florida in 2009, without having exercised any of the options. She exercised 2,115 of the options in 2014 and 2015 and immediately resold the shares at market prices. In *Willacy I*, we held that Cleveland properly taxed the income Willacy realized from those transactions. *Willacy I* at ¶ 9, 27, 35.

{¶ 4} Willacy exercised the remaining 600 options in 2016. Her exercise of those options generated almost $125,000 of income. Sherwin-Williams withheld Willacy's municipal-income-tax obligation—about $2,500—and paid it to Cleveland.

{¶ 5} Willacy sought a refund based on the fact that she had not lived or worked in Cleveland in 2016. Cleveland's tax administrator, appellee Nassim M.

Lynch, denied the request and issued an assessment. Willacy appealed the tax administrator's decision to appellee Cleveland Board of Income Tax Review, which affirmed the denial of the refund. Willacy then appealed to the BTA, which also affirmed the denial. Willacy appealed to this court as of right.

### Analysis

{¶ 6} We must determine whether the BTA's decision is "reasonable and lawful." R.C. 5717.04. In doing so, we must defer to the BTA's factual findings, so long as they are supported by "reliable and probative" evidence in the record. *Am. Natl. Can Co. v. Tracy*, 72 Ohio St.3d 150, 152, 648 N.E.2d 483 (1995). We review legal issues de novo. *Cincinnati v. Testa*, 143 Ohio St.3d 371, 2015-Ohio-1775, 38 N.E.3d 847, ¶ 15.

*Cleveland's tax assessment is not time-barred*

{¶ 7} In her first proposition of law, Willacy argues that Cleveland's taxation of her 2016 stock-option income is barred under Cleveland Codified Ordinance 191.1701, which provides:

> All taxes imposed by this chapter shall be collectible, together with any interest and penalties thereon, as other debts of like amount are recoverable, including, but not limited to, collection by suit. Any suit shall be brought within three (3) years after the city income tax was due or the return was filed, whichever is later. Except in the case of fraud, of omission of twenty-five percent (25%) or more of taxable income required to be reported, or of failure to file a return, no additional assessment shall be made after three (3) years from the time the city income tax was due or the city income tax return was filed, whichever is later.

Willacy contends that this provision precluded the tax administrator from making an assessment more than three years after Sherwin-Williams granted the stock options in 2007.

{¶ 8} Willacy's argument lacks merit. Cleveland Codified Ordinance 191.1701 prohibits Cleveland from making an assessment more than three years "from the time the city income tax was due or the city income tax return was filed, whichever is later." Under Cleveland Codified Ordinances 192.03(b)(1) and 192.06(hh)(2)(B), the income from Willacy's remaining 600 options was taxable when she exercised the options in 2016. And under Cleveland Codified Ordinances 191.1101(a) and 191.1301(a), her 2016 taxes on that income were due in April 2017. The tax administrator made his assessment in November 2017, well within the three-year limitations period.

{¶ 9} In arguing that her taxes were due when she earned the options in 2007, Willacy assumes that Cleveland may tax income only in the year in which the income-producing activity occurs. But we already have made clear that "the income-producing event (e.g., earning compensation) need not coincide with the taxable event (e.g., receiving income)." *Willacy I*, 159 Ohio St.3d 383, 2020-Ohio-314, 151 N.E.3d 561, at ¶ 28. Under Cleveland law, Willacy's remaining options became taxable when she exercised them in 2016. Her first proposition of law therefore lacks merit.

### *Cleveland's tax assessment does not violate Willacy's due-process rights*

{¶ 10} In her second proposition of law, Willacy argues that Cleveland violated the Due Process Clause of the United States Constitution and the Due Course of Law Clause of the Ohio Constitution by taxing her stock-option income in a year that she did not work in the city. In *Willacy I*, we held that Cleveland's taxation of Willacy's income satisfied due process. *Willacy I* at ¶ 21-34. Willacy acknowledges that her second proposition of law fails under the authority of *Willacy I*, but she argues that the prior decision should be overruled.

{¶ 11} Willacy offers little support for her claim that *Willacy I* was wrongly decided. She relies on *North Carolina Dept. of Revenue v. The Kimberley Rice Kaestner 1992 Family Trust*, ___ U.S. ___, 139 S.Ct. 2213, 204 L.Ed.2d 621 (2019), to argue that Cleveland may tax her only in the years when she worked in the city. But *Kaestner* held only that North Carolina could not tax trust income when the only connections to the state were trust beneficiaries who were residents of the state but who had not received distributions, had no right to demand trust income, and were uncertain ever to receive any. *Id.* at ___, 131 S.Ct. at 2221. *Kaestner* did not address the situation presented in this case.

{¶ 12} Willacy also argues that we should overrule *Willacy I* because she "was not afforded a full and fair opportunity to present her case" in *Willacy I*. She argues that she was "hampered by being compelled to litigate in a venue far from" her home and by being compelled to litigate questions concerning events that took place in 2007. She also contends that she was denied a hearing before the tax administrator concerning her 2014 and 2015 taxes. Willacy did not raise these alleged errors in *Willacy I*, and she has not shown that they would have had any impact on our decision. We therefore will not revisit the constitutional issues decided in *Willacy I* on this basis.

{¶ 13} Willacy next argues that *Willacy I* is factually distinguishable because this case involves her exercise of incentive stock options that generated intangible income, not of nonqualified stock options that generated qualifying wages. *See Willacy I*, 159 Ohio St.3d 383, 2020-Ohio-314, 151 N.E.3d 561, at ¶ 11-13, 30-33. *See also* 26 U.S.C. 83; 26 U.S.C. 422. To establish this fact, Willacy relies only on her own affidavit in which she asserted that the 2007 grant consisted of 1,424 incentive stock options and 1,291 nonqualified stock options. She reasons that because the options she exercised in 2014 and 2015 were treated as nonqualified stock options in *Willacy I*, the remaining options must be incentive stock options.

**{¶ 14}** The board of review did not give weight to Willacy's affidavit and found that Willacy had been issued only nonqualified stock options. Willacy did not contest that factual determination at the BTA, and the BTA found that Willacy's exercise of her remaining stock options generated qualifying wages in 2016. Willacy thus failed to preserve this argument for our review. *See Buckeye Internatl., Inc. v. Limbach*, 64 Ohio St.3d 264, 267, 595 N.E.2d 347 (1992). Moreover, evidence in the record supports the BTA's finding that the options were nonqualified stock options—namely, Willacy's W-2 for tax year 2016 in which Sherwin-Williams reported the income as ordinary income derived from nonstatutory stock options. We must defer to the BTA's finding because it is supported by reliable and probative evidence in the record. *See Am. Natl. Can Co.*, 72 Ohio St.3d at 152, 648 N.E.2d 483. The material facts in this case therefore do not differ from those in *Willacy I*.

**{¶ 15}** Finally, Willacy argues that an intervening change to Regulation 3:01(B)(8), issued by Cleveland's Division of Taxation Central Collection Agency, makes this case different from *Willacy I*. Regulation 3:01(B)(8) was amended, effective January 1, 2016, to provide that an employer

> is not required to withhold municipal income tax with respect to an individual's disqualifying disposition of an incentive stock option if, at the time of the disqualifying disposition, the individual is not an employee of either the corporation with respect to whose stock option has been issued or of such corporation's successor entity.

Willacy suggests that this part of Regulation 3:01(B)(8) applies to her because she was no longer employed by Sherwin-Williams when she realized income from the exercise of her stock options in 2016. But as just discussed, Willacy's exercise of those remaining stock options in 2016 was not a disqualifying disposition of incentive stock options. And even if it were, Regulation 3:01(B)(8) would not render her

income nontaxable; it only would relieve Sherwin-Williams of the duty to withhold her tax obligation. The change to Regulation 3:01(B)(8) simply does not apply in this case.

{¶ 16} Because Willacy has not shown that we should overrule *Willacy I* or that *Willacy I* does not apply, we reject her second proposition of law.

*Cleveland's tax assessment is not barred under the doctrine of res judicata*

{¶ 17} In her third proposition of law, Willacy argues that Cleveland may not tax her 2016 stock-option income because the city refunded the amounts Sherwin-Williams had withheld when she received stock-option income in 2010, 2011, and 2012. She contends that Cleveland is bound to follow its past practice because the earlier refunds involved the same issue presented here. She invokes the collateral-estoppel aspect of the doctrine of res judicata.

{¶ 18} Collateral estoppel "precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action." *Whitehead v. Gen. Tel. Co.*, 20 Ohio St.2d 108, 112, 254 N.E.2d 10 (1969), *overruled in part on other grounds, Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995). The doctrine may be used to bar relitigation of an issue that was decided in an administrative proceeding if the proceeding was "of a judicial nature." *Superior's Brand Meats, Inc. v. Lindley*, 62 Ohio St.2d 133, 403 N.E.2d 996 (1980), syllabus.

{¶ 19} In arguing that Cleveland is estopped from taxing her stock-option income, Willacy contends that it is irrelevant that the parties did not litigate the issue in 2010, 2011, or 2012, because collateral estoppel applies to judgments entered by agreement. But Willacy has not shown that there were any administrative proceedings resembling a judicial trial concerning tax years 2010, 2011, or 2012, or that Cleveland issued the refunds in response to a judgment or adjudication. Willacy's third proposition of law fails because the question whether she owed taxes based on her exercise of stock options in 2010, 2011, or 2012 was not litigated in a

proceeding of a judicial nature. *See Am. Soc. for Metals v. Limbach*, 59 Ohio St.3d 38, 39, 569 N.E.2d 1065 (1991).

**{¶ 20}** Willacy nevertheless argues that collateral estoppel applies because Cleveland could have denied her requests and litigated the issue in prior years. She relies on *Aspinwall v. Mentor Bd. of Tax Rev.*, 146 Ohio App.3d 466, 2001-Ohio-8896, 766 N.E.2d 1034 (11th Dist.), in which the court held that "[t]he doctrine of res judicata is applicable to quasi-judicial decisions by administrative agencies from which no appeal is taken." *Id*. at ¶ 13. Res judicata applied against the taxpayers in *Aspinwall* because they did not challenge an adverse decision when they had an opportunity to do so. *Aspinwall* is distinguishable because Willacy and Cleveland were not adversaries in 2010, 2011, and 2012—Willacy simply asked for refunds and the city gave them to her.

**{¶ 21}** Willacy also argues that we validated her collateral-estoppel theory in *Christian Voice of Cent. Ohio v. Testa*, 147 Ohio St.3d 217, 2016-Ohio-1527, 63 N.E.3d 1153. But we did no such thing. In fact, we expressly declined to address the taxpayer's collateral-estoppel argument in that case. *See id*. at ¶ 3-4, 39.

**{¶ 22}** With her third proposition of law, Willacy is attempting to bind the tax administrator not to a judgment or an adjudication rendered against the city but to the city's own actions in voluntarily issuing refunds in prior years. Cleveland's prior conduct alone cannot support the application of collateral estoppel—the doctrine binds a party to a prior adjudication of a tribunal, not to its own unilateral action. A party, to be sure, may be equitably estopped based on its prior conduct, but equitable estoppel ordinarily is not available as a remedy against tax assessments. *See Crown Communication, Inc. v. Testa*, 136 Ohio St.3d 209, 2013-Ohio-3126, 992 N.E.2d 1135, ¶ 21.

**{¶ 23}** We reject Willacy's third proposition of law because she has not shown that collateral estoppel applies to prevent taxation of her 2016 income based on Cleveland's actions in 2010, 2011, or 2012.

**Conclusion**

{¶ 24} We hold that Cleveland's taxation of Willacy's 2016 compensation was required under municipal law and did not violate her due-process rights. We therefore affirm the decision of the BTA.

Decision affirmed.

O'CONNOR, C.J., and KENNEDY, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

FISCHER, J., dissents, with an opinion.

_____

**FISCHER, J., dissenting.**

{¶ 25} Once again, we are asked to decide whether an Ohio municipality may tax whomever it likes, wherever it likes, and whenever it likes. To be precise, we are asked to decide once more whether the city of Cleveland can "reach back in time and across state lines to tax the income of a nonresident." *Willacy v. Cleveland Bd. of Income Tax Rev.* ("*Willacy I*"), 159 Ohio St.3d 383, 2020-Ohio-314, 151 N.E.3d 561, ¶ 60 (Fischer, J., dissenting). Because this is not the Marvel Cinematic Universe, and, unlike Thanos, the city of Cleveland is bound by the rules of time, space, and the Due Process Clause, I believe the answer to that question is still a resounding no.

{¶ 26} The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires a "minimum connection, between [the taxing entity] and the person, property or transaction it seeks to tax." *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344-345, 74 S.Ct. 535, 98 L.Ed. 744 (1954). As I have said before, I believe this means that there must be "some minimal geographic and temporal connection" between an Ohio municipality, the person, and the income it seeks to tax. *Willacy I* at ¶ 36 (Fischer, J., dissenting).

{¶ 27} In this case, as in *Willacy I*, I find it very hard to say that such a connection was present between Willacy, the income that is being taxed, and the

city of Cleveland. After all, by the time the city imposed its tax in 2016, Willacy had not been a resident or worker there for over seven years. In fact, by that time, Willacy was about a thousand miles away, residing in another state. Consequently, any connection here between Willacy and the city of Cleveland was less than minimal, it was nonexistent.

{¶ 28} Of course, it does not have to be this way. Despite the fact that the majority opinion finds that the city of Cleveland's practice is constitutionally sound, the General Assembly is also free to put a stop to extraterritorial taxation like this. Article XIII, Section 6, and Article XVIII, Section 13, Ohio Constitution. There are models for doing just that, *see, e.g.*, 4 U.S.C. 114, and I would encourage the General Assembly to review those statutes and take up this issue. Until then, based on my view of the Due Process Clause and the limits it places on a government's ability to tax, I must respectfully dissent.

_____

Aubrey B. Willacy, for appellant.

Barbara A. Langhenry, Cleveland Director of Law, and Donna M. Busser and William E. Gareau Jr., Assistant Directors of Law, for appellees.

_____